[S. F. No. 9778. In Bank.—October 26, 1922.]

MAR SHEE, etc., Respondent, v. MARYLAND ASSUR-
ANCE CORPORATION, BALTIMORE (a Corpora-
tion), Appellant.

[1] EVIDENCE—VERDICT OF CORONER'S JURY—CIVIL ACTION.—While a
coroner's inquest may partake somewhat of a judicial character, it
does not do so to an extent which confers upon the verdict of a
coroner's jury any inherent evidentiary value so as to render it
admissible in evidence as against either party to an adversary
civil action.

[2] ACCIDENT INSURANCE—PROOFS OF DEATH—COPY OF VERDICT OF
CORONER'S JURY—ACTION ON POLICY—EVIDENCE.—Where a policy
of accident insurance requires the furnishing of a copy of the
coroner's verdict with the proofs of death, the claimant is not to
be held by the mere compliance with such requirement to have
adopted as his own the recitals or declarations contained in such
verdict.

[3] EVIDENCE—PRESUMPTIONS.—A fact is proved as against a party
when it is established by the uncontradicted testimony of the party
himself or of his witnesses, under circumstances which afford no
indication that the testimony is the product of mistake or inad-
vertence, and when the fact so proved is wholly irreconcilable
with the presumption sought to be invoked, the latter is dispelled
and disappears from the case.

[4] ACCIDENT INSURANCE—SHOOTING OF INSURED—EVIDENCE—REBUT-
TAL OF PRESUMPTION OF INNOCENCE.—In an action to recover on
a policy of accident insurance providing that the company should

1. Verdict in coroner's inquest as evidence in subsequent proceed-
ings, notes, 95 Am. St. Rep. 763; 4 Ann. Cas. 1020, 1096; Ann. Cas.
1917B, 892; 68 L. R. A. 285; 45 L. R. A. (N. S.) 404; L. R. A. 1918E,
924.

not be liable for any injury, fatal or otherwise, resulting directly or indirectly from murder, the presumption that the shooting of the insured was not criminal or wrongful and hence must have been accidental, was overcome by plaintiff's uncontradicted evidence that the insured was shot twice in the back and that no person was in sight when the witness arrived at the scene of the shooting, it being inconceivable how he could have been so shot unless the person who did the shooting was aiming at him.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Daniel C. Deasy, Judge. Reversed.

The facts are stated in the opinion of the court.

John Ralph Wilson, Charles B. Morris and Fred L. Berry for Appellant.

Harding & Monroe and Robert H. Borland for Respondent.

MYERS, J., *pro tem.*—Plaintiff brought this action as the beneficiary under an accident insurance policy issued to Fong Wing, which insured him against "loss resulting from bodily injuries, including death resulting therefrom, effected independently and exclusive of all other causes directly through accidental means." Upon this policy was indorsed a rider or proviso as follows: "Nor shall the company be liable for any injury, fatal or otherwise, resulting directly or indirectly from murder, highbinder acts, or tong wars, anything else in the policy to the contrary notwithstanding." The defendant denied that the death resulted through accidental means and alleged affirmatively that the death of the insured resulted from "murder, highbinder acts, and tong wars." Plaintiff had judgment below and the defendant appeals on the ground of insufficiency of the evidence to sustain the findings and of errors of law occurring at the trial.

The facts so far as established by the evidence are substantially as follows: On December 21, 1918, at about 8 o'clock in the evening, the insured, Fong Wing, left his store on Waverly Place in the city of San Francisco, presumably for the purpose of going to a drug-store on the corner of Clay street and Grant Avenue. About fifteen minutes thereafter four or five or six shots were heard in rapid

succession, there being an appreciable interval between the first two and those which followed. A witness who was in front of his store on Waverly Place, diagonally across from Fong Wing's store, ran out to the street immediately upon hearing the shots and found Fong Wing lying upon the sidewalk mortally wounded. No other person was in sight upon the street at that time nor was anyone heard running or walking away from that vicinity, nor was any smoke from the shots visible. It was after dark and the street lights were burning but it was "not very light" at that point. Fong Wing had been shot twice in the back with bullets of 38-caliber or larger one of which entered between the shoulders, slightly to the left of the spine and the other of which entered the posterior portion of his left side, just above the hip bone. Both bullets had ranged somewhat downward in their course through his body and either one was sufficient to cause death. He died about three hours thereafter.

It also appeared in evidence that the insured was a director of the China Mail Steamship Company, a corporation which had about 9,000 Chinese stockholders; that this corporation had expended more than $3,000,000 in a manner which met with intense dissatisfaction on the part of some of its stockholders and that various threats had been made against its officers, both orally and by means of anonymous letters. The precise nature of the threats does not appear. Some of them could be construed as threats of personal violence towards some officials of the steamship company and others of them appear to have been merely attempts to extort bribes or hush money upon the threat to hold up a pending bond issue of the corporation by means of legal proceedings. It does not, however, appear that any threat of any character was directed at Fong Wing personally. It further appears that about six months prior to the shooting a number of officers and stockholders of the corporation, among whom was Fong Wing, had applied to the chief of police, telling him of threats which had been made against them and asking for police protection.

[1] In support of its contention that the evidence is insufficient to support the findings, the defendant makes two points. The first is, that under the circumstances of this case the plaintiff is precluded from recovery by the verdict

of the coroner's jury, a certified copy of which was received in evidence. The terms of the policy required the claimant thereunder to attach to and include with her proofs of death a certified copy of the verdict of the coroner's jury, which was done. This verdict found "that said deceased was murdered by parties unknown to the jury." Defendant contends that the verdict of a coroner's jury is competent evidence because found and rendered in the course of an official proceeding of a judicial character, and relies upon *People* v. *Devine,* 44 Cal. 452, 458, as so holding. The sole question there before this court was as to the admissibility of the deposition of a witness at the coroner's inquest for the purpose of impeaching that witness by showing that her testimony given at the trial was contradicted by her testimony given at the inquest.

The conclusion there reached as to the judicial character of the proceedings was based upon the uniform holdings of the English courts to that effect under the common law and the statute of 4 Edward I, but in so concluding this court overlooked a fundamental difference between coroners' inquests under the English law and the proceedings called by the same name under the law of this state. Under the English law, one important purpose of the coroner's inquest was to ascertain and determine whether or not the circumstances were such as would result in an escheat to the crown of the real property of the deceased, and to make an official record of such determination. (1 Jones' Blackstone, sec. 478.)

In this state substantially all the rules of law governing the conduct of inquests are to be found in the Penal Code (secs. 1510, 1520), the provisions in the Political Code (secs. 4143, 4148) having to do mainly with the subject of fees and expenses, and the preservation of vital statistics. It appears from a consideration of all of these provisions that the primary purpose of such inquest under our laws is to provide a means for the prompt securing of information for the use of those who are charged with the detection and prosecution of crime. We conclude therefore that, while in England a coroner's inquest may be fairly said to be in the nature of a judicial proceeding *in rem,* no such dignity or weight attaches to such an inquest in this state; that while such proceedings in this state may partake somewhat of a judicial character, they do not do so to an extent

which confers upon the verdict of such a jury any inherent evidentiary value so as to render it admissible in evidence as against either party to an adversary civil action.

[2] It is urged by counsel for appellant that if the coroner's verdict was not *inherently* competent it was rendered competent as against the plaintiff by the fact that she delivered a certified copy of it to the defendant as a part of her proofs of death; that by so doing she must be held to have adopted it as her own declaration; and it is accordingly admissible in evidence as against her, as her own admission against interest. This, notwithstanding the fact that she was *required* by the terms of the policy to furnish a copy of the coroner's verdict as a part of the proofs of death. In support thereof they cite the decision of this court in *Walther* v. *Mutual Life Ins. Co. of New York*, 65 Cal. 417 [4 Pac. 413], which appears to fully support their contention.

That was an action upon an insurance policy which excluded "self destruction in any form" as a ground of liability. The defense was suicide. Upon the trial the plaintiff offered, for the sole purpose of proving compliance with the terms of the policy, the proofs of death which included a copy of the coroner's verdict finding that the deceased committed suicide. This court held that when the papers were in evidence they were in for all purposes; that they were *prima facie* evidence of suicide, placing upon the plaintiff the burden of overcoming the presumption thus raised; and that inasmuch as she had offered no other evidence of the cause of death she could not recover. It was asserted in the briefs, but not stated by the court, that plaintiff was required by the terms of the policy to furnish the copy of the verdict with her proofs of death. No reason was stated in the opinion for the conclusion thus reached, other than the citation of the case of *Insurance Co.* v. *Newton*, 22 Wall. [89 U. S.] 32 [22 L. Ed. 793, see, also, Rose's U. S. Notes].

An examination of that case discloses that it falls far short of supporting the rule here contended for and apparently adopted in the Walther case. That also was an action upon a policy defended on the ground of suicide. The proofs of death in that case included a number of affidavits together with a copy of the coroner's verdict; and the *affidavits,* as

well as the verdict all showed death by suicide. The defendant offered them in evidence and their exclusion by the trial court was held to be prejudicial error. The supreme court held that they "were admissible as representations on the part of" the plaintiff, saying: "They were intended for the action of the company, and upon their truth the company had a right to rely. Unless corrected for mistake, the insured was bound by them. Good faith and fair dealing required that she should be held to *representations deliberately made."* (Italics ours.) It is apparent that the court in using this language had in mind the *affidavits,* the procurement of which by the plaintiff rested largely in her discretion, and the submission of which to the company was, in large measure at least, her *voluntary act.* The quoted language is entirely inapt to describe the coroner's verdict, in the framing of which the plaintiff could have no voice and in the submission of which to the company she could have no choice. We are confirmed in this conclusion by the following language of the supreme court of Massachusetts, quoted with approval in the opinion in the Newton case: "the effect of such disclosure (of purported facts in the proofs of death) to defeat the action must depend upon the *degree to which the plaintiff is bound by the statement. If not sworn to by the plaintiff, nor treated by him in such manner that he is concluded by his conduct,* the whole question will be open to explanation and proof." (Italics ours.)

We conclude therefore that where, as here, the policy requires the furnishing of a copy of the coroner's verdict with the proofs of death, the claimant is not to be held, by the mere compliance with such requirement, to have adopted as his own the recitals or declarations contained in such verdict. If the Walther case, *supra,* is to be construed as in conflict with this conclusion, it is to that extent disapproved and overruled. We do not intend to intimate that there may not be circumstances under which the claimant under such a policy should be held to have adopted as his own the declarations or recitals in such a verdict and to have thus rendered them competent evidence against him. But no such circumstances have here been made to appear.

There was direct evidence to the effect that Fong Wing was not at any time connected with any highbinder tong,

and that there was no tong war at that time which affected the tong or family of which he was a member, so that appellant's claim in this connection narrows down to the contention that the evidence shows without conflict that he was murdered. Appellant concedes that under the circumstances here shown the plaintiff was entitled, in the first instance, to the benefit of the presumption of law that the shooting was accidental, rather than criminal. But it claims that where, as here, *the facts are proved to the contrary,* the presumption is dispelled, the conflict vanishes, and nothing remains to support the finding of the court.

[3] There seems to be some confusion in the decisions of this state with respect to the extent to which, under various circumstances presumptions of law are to be regarded as evidence of facts. The code expressly declares them to be evidence (Code Civ. Proc., secs. 1957, 1963), and admonishes the trial judge to instruct the jury on all proper occasions "that they are not bound to decide in conformity with the declarations of any number of witnesses, which do not produce conviction in their minds, against a . . . presumption." (Code Civ. Proc., sec. 2061, subd. 2.)

Among the decisions of this court recognizing and applying the foregoing rule may be mentioned the following: *Sarraille* v. *Calmon,* 142 Cal. 651 [76 Pac. 497]; *Adams* v. *Hopkins,* 144 Cal. 19 [77 Pac. 712]; *Moore* v. *Gould,* 151 Cal. 723 [91 Pac. 616]; *People* v. *Siemsen,* 153 Cal. 378, 390 [95 Pac. 863]; *Freese* v. *Hibernia Sav. etc. Soc.,* 139 Cal. 392 [73 Pac. 172]; *Gilmore* v. *North Pasadena Land etc. Co.,* 178 Cal. 6 [171 Pac. 1066].

On the other hand is the line of cases illustrated by the case of *Savings & Loan Soc.* v. *Burnett,* 106 Cal. 514, 529 [39 Pac. 922, 925], relied on by appellant, wherein it is said "disputable inferences or presumptions, while evidence, are evidence the weakest and least satisfactory. They are allowed to stand, not against the facts they represent, but in lieu of proof of them. The facts being proven contrary to the presumption, no conflict arises; the presumption is simply overcome and dispelled." Among the cases which appear to follow and apply this rule are the following: *Savings & Loan Soc.* v. *Burnett,* 106 Cal. 514, 529 [39 Pac. 922]; *Larrabee* v. *Western Pac. Ry. Co.,* 173 Cal. 743, 747 [161 Pac. 750]; *Williams* v. *Hasshagen,* 166 Cal.

386, 390 [137 Pac. 9]; *Freese* v. *Hibernia Sav. etc. Soc.,* 139 Cal. 392 [73 Pac. 172]; *King* v. *Hercules Powder Co.,* 39 Cal. App. 223 [178 Pac. 531]; *Brown* v. *Chevrolet Motor Co.,* 39 Cal. App. 738 [179 Pac. 697]; *Maupin* v. *Solomon,* 41 Cal. App. 323 [183 Pac. 198].

There is a third group of cases which recognize the rule that "as against a proved fact, or a fact admitted, a disputable presumption has no weight," but hold also that "where an endeavor is made to establish a fact contrary to the presumption, the fact in dispute still remains to be determined upon a consideration of all of the evidence including the presumption." (*Pabst* v. *Shearer,* 172 Cal. 239, 242 [156 Pac. 466]; *Pacific Portland C. Co.* v. *Reinecke,* 30 Cal. App. 501–507 [158 Pac. 1041]; *People* v. *Milner,* 122 Cal. 171, 179 [54 Pac. 833].)

In order then to resolve this apparent conflict it becomes important to determine what is "a proved fact," within the meaning of the rule. Looking to the nature of the evidence by which the fact was "proved" contrary to the presumption in the several cases so holding, we find that in both the Burnett case and the Larrabee case, *supra,* the fact was proved by the testimony of both the witnesses for the plaintiff and the witnesses for the defendant, without substantial conflict; and that the fact so proved was irreconcilable with the presumpton. In the Williams and Freese cases, *supra,* none of the testimony in support of the facts contrary to the presumption was given by witnesses of the party who relied upon the presumption, and the court in those cases, while recognizing the rule that as against a proved fact a presumption disappears, refused to apply it to that situation.

In the cases above cited from the district court of appeal, that court in each instance recognized and undertook to apply the rule, but did not in fact do so, as it was there dealing in each instance, not with a presumption of law, but with an inference of fact. That distinction was pointed out by this court in its order denying a hearing in the Maupin case, *supra.*

In the case of *Albert* v. *McKay & Co.,* 174 Cal. 451, 457 [163 Pac. 666], this court held in effect, but without discussion, that a presumption cannot be deemed to give rise to a

conflict of evidence, unless the presumption on the one hand is irreconcilable with the evidence on the other hand.

From the foregoing we deduce that a fact is proved as against a party when it is established by the uncontradicted testimony of the party himself or of his witnesses, under circumstances which afford no indication that the testimony is the product of mistake or inadvertence; and that when the fact so proved is wholly irreconcilable with the presumption sought to be invoked, the latter is dispelled and disappears from the case.

[4] Considering the evidence herein in the light of this rule, it is apparent that the evidence which is claimed by appellant to prove that the insured was murdered in the carrying out of a conspiracy to blackmail the steamship company is of such a vague and insubstantial character that it goes no further than to arouse a suspicion or afford ground for conjecture or speculation. Furthermore, it was in no way binding upon the plaintiff. But the proof of the facts and circumstances immediately surrounding the shooting was furnished by plaintiff's own witnesses, was uncontradicted, and its truth is not questioned by either party. Are the facts thus proved irreconcilable with the presumption relied on by plaintiff? In this connection it should be noted that, strictly speaking, there is no presumption of law that the shooting was accidental. The presumption here involved is "that a person is innocent of crime or wrong." (Code Civ. Proc., sec. 1963, subd. 1.) As applied to the present situation, the presumption is that the shooting was not criminal or wrongful, from which the conclusion would follow that it must have been accidental. But we are unable to conceive of any set of circumstances under which the insured could have been shot *twice,* in the manner here shown, unless the person who did the shooting was aiming at him. We are thus led inevitably to the conclusion that the person who did the shooting intended to shoot either Fong Wing or some other person for whom he mistook Fong Wing. But the killing, in either of these events, constituted murder in the first degree. (*People* v. *Suesser,* 142 Cal. 354, 366 [75 Pac. 1093].)

The facts thus proved being wholly irreconcilable with the presumption of innocence, it is dispelled thereby, and

no evidence remains to support the finding that the insured was not murdered. As the judgment must be reversed for this reason, it is unnecessary to here consider the claimed errors of law.

The judgment is reversed.

Waste, J., Richards, J., *pro tem.*, and Lennon, J., concurred.

SHAW, C. J., Concurring.—I concur, but I do not agree that the fact of murder must be proved by ''uncontradicted testimony of the party himself or of his witnesses, under circumstances which afford no indication that the testimony is the product of mistake or inadvertence.'' Such circumstances must be weighed by the court or jury, and the testimony need not be uncontradicted.

LAWLOR, J., Dissenting.—I dissent. It is conceded by the majority opinion that a conclusion of accidental death follows from the disputable presumption that the killing was not criminal, but holds such conclusion was dispelled by the evidence for respondent that decedent was shot twice in the back—this constituting a ''proved fact'' within the meaning of the rule adopted by the opinion. It may be assumed on appeal that a fact is proved and such a presumption dispelled within the meaning of the rule when, for instance, a witness for the party claiming the presumption testified directly to the contrary, or when the uncontradicted testimony offered by such a party is irreconcilably opposed to the presumption. But such an assumption is not to be indulged if in determining whether a fact has been proved it is necessary to consider the probative force of the evidence. In every case the presumption and the other evidence must be considered together. In either of the instances I have suggested, only one inference could be drawn from the evidence and that would be in favor of the other party. Of course, where opposing inferences may be drawn the one found by the trial court will not be disturbed on appeal.

The main opinion proceeds on the theory that, as matter of law, only one inference is deducible from the evidence offered by respondent and that therefore the pre-

sumption has been overcome. In my opinion the evidence is susceptible of two inferences—either that the killing was not intentional or that it was murder.

The circumstances are these: Suddenly several shots were heard and two bullets were found in different portions of decedent's back. Wong Ming Yin went immediately to the scene. He saw no other person in the vicinity. No smoke was visible, no weapons were found and no one was seen or heard running away. The only statement made by the wounded man was to give his name. It may be remarked that if we were considering whether the foregoing evidence established the *corpus delicti* it could hardly be claimed we would not be bound to uphold a finding either that the death was or was not caused by criminal means.

In appellant's third amended answer it is alleged that Fong Wing's death was directly caused by highbinder acts or by other unlawful acts and personal disputes and tong wars which resulted in his murder. The finding is a negation of this defense. Concerning the evidence admitted under the above allegations of the answer as tending to establish a motive for the killing it may be pointed out that several settlements had been made by the officers of the steamship company, of whom the deceased was one, with the dissatisfied stockholders; that six months intervened between the request for police protection and the shooting; that deceased was not a member of a fighting tong. One Fong Fat testified as follows: "Q. When you first heard the first shot, that is when the sound came to your ear, did you look out? A. I looked out as much as I could but I don't care to go out. Q. Why didn't you care to go out? A. There was more or less trouble going on you know. Q. In Chinatown? A. Among the tongs. The chances if I would go out I might get in the way, there is so much flying bullets anyways, and one is liable to catch it, so I did not care to go out." Man Quong Fong, general manager of the steamship company, testified that "After the death of Mr. Fong Wing we at that time and even up to the present time did not know the reason for his death." There is no evidence that the deceased took an active part in the affairs of the steamship company which led to the trouble between the officers and the stockholders, although

he joined in the request for police protection. It was testified that no weapons were taken from Fong Wing.

In weighing the probabilities of the evidence it is conceivable to me that the trial court could have concluded, as against the circumstance upon which the prevailing opinion relies—that two bullets were found in Fong Wing's back—that it was more likely he came to his death as a result of a shooting affray between other Chinese than that he was the object of assassination. Upon the face of the evidence one theory would be no more speculative than the other. The fact that Fong Wing was unarmed and that there was an interval after the second shot might have indicated to the trial court that the shooting was between other persons. Under either theory those responsible for the shooting would naturally disappear and take their weapons with them.

Evidence of the presence or absence of motive is always admissible in such cases and often is of a most persuasive character. It must be presumed from the record in this case and in favor of the finding that the court decided there was no motive for the killing. It may also have reasoned that if the shooting was intentional Fong Wing would have said more to his fellow countryman than to merely mention his name and that more than two of the bullets would have found lodgment in his body.

In the summary of the evidence I have not attempted to determine its probative value but have only considered the effect which the court below might have given to it. I cannot avoid the conclusion that the evidence would support either theory and that for this court to hold it could not have the effect stated in the findings is to invade the province of the trial court. It seems plain to me beyond controversy that in arriving at the conclusion that only one inference could be drawn from the evidence the majority opinion must of necessity have passed on its probative effect, for there is no presumpton or other rule of law that the presence of two bullets in a person's back is sufficient proof of murder. I do not think it can be held on appeal that this circumstance avails as matter of law against all the other facts and circumstances which the trial court may have inferred from the evidence, for before it can be said that such a circumstance is irreconcilably

opposed to the presumption its probative effect must be determined.

Rehearing denied.

Lawlor, J., and Sloane J., dissented.

Waste, J., was absent.