# GREAT AMERICAN INDEMNITY CO. v.
## BERRYESSA et al.

No. 7680.   Decided September 23, 1952.   (248 P. 2d 367.)

See 11 C. J. S., Bills and Notes, sec. 716. Validity of contract for repayment of embezzled money. 12 Am. Jur., Negligence, secs. 192 et seq.; 32 A. L. R. 422.

*Thatcher & Young, LeRoy B. Young,* Ogden, for appellant.

*Howell, Stine & Olmstead,* Ogden, for respondent.

WADE, Justice.

The Great American Indemnity Company, appellant herein, brought this suit against Frank Berryessa and W. S. Berryessa, the obligors on a joint promissory note. Frank Berryessa was not served with summons and did not participate in the trial. W. S. Berryessa pleaded as defenses duress and lack of consideration and also counterclaimed for the return of $1,500 paid by him and the cancellation of a personal check given by him and not cashed at time of suit. This appeal is from a jury verdict and judgment thereon in favor of respondent W. S. Berryessa.

Viewing the evidence in the light most favorable to respondent, as we must, the jury having found in his favor, it discloses that Frank Berryessa, a son of W. S. Berryessa, misappropriated some funds of his employer, the Eccles Hotel Company, which operates the Ben ■ Lomond Hotel in Ogden, Utah. When the father first

learned of this, it was thought that the sum involved was approximately $2,000 and he agreed to repay this amount if the bonding company would not be notified and no publicity given to the matter, and gave the hotel his promissory note for $2,186 to cover the shortage. Before this note became due, it was discovered that the shortage would probably be over $6,000 and therefore the manager of the hotel called W. S. Berryessa in for a conference. W. S. Berryessa knew he couldn't pay this larger sum and it was decided that the bonding company, the appellant herein, should be advised of the shortages. The hotel didn't try to collect the note for $2,186 after the bonding company was notified apparently expecting that company to reimburse the hotel for the entire shortage discovered. After the bonding company was notified, its agent had several conferences with the Berryessas and the hotel management in which there was ascertained that the total shortage amounted to $6,865.28 and Frank Berryessa signed a statement that he had misappropriated that amount. Frank Berryessa had stated that he had given a brother-in-law some of the money he had embezzled and it was suggested that he sign a note along with the Berryessas. The brother-in-law did not sign the note and at a further meeting of the Berryessas with the agent W. S. Berryessa indicated that he did not think his son Frank would be able to make the payments of $250 quarterly suggested and that he was sure that he personally would not be able to do so and therefore did not want to sign the note. Mr. Berryessa then testified, although this was denied by the agent, that the agent thereupon swore, pounded his fists on his desk, and told him, "You can't come here and tell me what you will do." and then told them that if W. S. Berryessa would pay $2,000 in cash and sign a note with Frank Berryessa for $4,865.20, payable at the rate of $50 a month, that Frank would not be prosecuted but that if he did not sign Frank would have to be prosecuted. Thereupon, W. S. Berryessa agreed to do this and a couple of days later signed the note sued upon herein and about a month later, having secured a loan by

mortgaging his home, gave the agent a cashier's check in the amount of $1,502 and a personal check in the amount of $500 as payment for the $2,000 cash agreed upon. Mr. Berryessa asked the agent not to cash the $500 check for about a month until he could get some more funds to pay it. This is the check which was never presented for payment by the appellant.

At the conclusion of the trial, appellant moved for a directed verdict in its favor and for a dismissal of the counterclaim because there was insufficient evidence of duress or lack of consideration. The court refused to grant its motion and this refusal is relied upon by appellant for reversal in this case.

It is appellant's contention that there was insufficient evidence of duress to present that question to the jury and that the court erred in giving its instructions numbered 1 and 6 because it gave the jury the idea that there were two separate and distinct defenses to the validity of the transaction. Respondent pleaded both duress and illegal consideration as defenses. The court in its Instruction No. 1 told the jury:

"You are instructed that the defendant, W. S. Berryessa, admits signing the note sued upon but raises two defenses to his liability thereon. The first defense is that his signature was obtained as a result of the duress upon him of the plaintiff's agent, J. G. Hagman, Jr., that if defendant, W. S. Berryessa, did not sign the note his son, Frank Berryessa, would be criminally prosecuted and sent to jail. The second defense is that even if it should be determined that such duress has not been proven, nevertheless the only consideration for his signing the note was the promise of plantiff's agent, J. G. Hagman, Jr., that if he would sign Frank Berryessa would not be criminally prosecuted, and that such consideration is illegal and insufficient to support the note. You are instructed that either of these defenses, if established by preponderance of the evidence is a sufficient and adequate defense to plaintiff's action against the defendant, W. S. Berryessa."

In Instruction No. 6 the jury were told:

"You are instructed that the note sued upon by the plaintiff is invalid against the defendant, W. S. Berryessa, if not supported by a valuable consideration. A promissory note given for the suppression of a criminal prosecution is against public policy and cannot be enforced between the parties, and it is immaterial whether the individual as to whom the criminal prosecution is suppressed was guilty or innocent. Accordingly, if you believe from a preponderance of the evidence that the defendant, W. S. Berryessa, signed the note sued upon by the plaintiff in consideration of plaintiff's promise through its agent, J. G. Hagman, Jr., that Frank Berryessa would not be criminally prosecuted for his defalcations, the note is invalid as to the defendant, W. S. Berryessa, and you must so find.

"The burden of proof is on the defendant in this case to prove that the consideration for which the defendant signed the note was the suppression of a criminal prosecution against defendant's son."

It will be noted that these instructions correctly placed the burden of proving their defenses of duress or illegal consideration upon the Berryessas.

It is well settled that a note given to suppress a criminal prosecution is against public policy and is not enforceable between the parties. See 10 C. J. S., Bills and Notes, § 154, pages 630-631 and *Simon Newman Co.* v. *Woods*, 85 Cal. App. 360, 259 P. 460, on pages 462, 463, wherein the court said:

"It is conceded that a note or mortgage given on promise to refrain from the prosecution of a person for a felony, or under threats of arrest or prosecution, would be void as against public policy; * * *."

In this case respondent relied on two separate defenses, duress and illegal consideration, either one of which is sufficient to nullify this note. So if the jury found that the note was the result of duress or that respondent signed the note because appellant promised to refrain from criminal prosecution of his son, either one would be sufficient to invalidate the note and would constitute a defense thereto.

The uncashed check and the payment of $1,500 cash, present a different problem. Respondent had given the

hotel a note for slightly over $2,000 to pay for the son's defalcations. At the time this note was given, there can be no question that no coercion was exercised against respondent and that his act was voluntary and at his own suggestion. There is nothing in the record to indicate that this note was given under duress or a promise to suppress prosecution. When appellant as surety paid the hotel the entire amount embezzled, it was entitled to be subrogated to the rights of the hotel and to an assignment of the note which respondent had given it. Respondent knew he had signed the note and was liable thereon. He, therefore, substituted for his promise to pay the hotel a promise to pay $2,000 to the Indemnity Company. In conformity to that promise, he paid $1,500 and gave his check for $500. This should be regarded as the extinguishment of a preexisting, valid debt, which the appellant had a right to collect. Under such circumstances, the court erred in submitting the issue of duress and illegal consideration to the jury on respondent's counterclaim.

The judgment against appellant on its complaint is affirmed. The judgment in favor of the respondent on his counterclaim is reversed. Each party to bear their own costs.

McDONOUGH and CROCKETT, JJ., concur.

WOLFE, Chief Justice (concurring-dissenting).

I concur in the majority opinion as to the counterclaim.

I dissent from the holding that there can be no recovery on the note. To hold in this case that the note was given for an illegal consideration and is therefore not enforceable is unjust and unreasonable. Frank Berryessa owed the sum of $6,865.28 to the Great American Indemnity Company as a subrogee of the Hotel Company, after the Indemnity Company paid the amount embezzled by Frank. Frank's agreement to sign the note is not against public policy. It is merely recognition on his part that he owes

a legal debt. The consideration for Frank's signature to the note is an implied promise to repay the amount criminally taken by him. The accommodation party, W. S. Berryessa, is liable on the note without receiving consideration therefor, 61-1-30, U. C. A. 1943; Uniform Negotiable Instruments Act, Sec. 29.

But it is stated by the authorities that,

"Bills and notes for the *concealment* of a crime or the *suppression* or *hindering* of a criminal prosecution are against public policy and cannot be enforced between the immediate parties, whether the maker was innocent or guilty. If an agreement not to prosecute criminally forms any part of the consideration, it is immaterial that there was an existing indebtedness which could have been a consideration for the instrument, as where the bill or note was given for money embezzled or stolen by the maker." (Italics added.) 10 C. J. S., Bills and Notes, § 154, pages 630-631.

I am willing to admit that, as a matter of law, W. S. Berryessa signed the note with the hope and expectation that his son Frank would not have to go to prison, but such a tacit agreement between the parties is not such a concealment, suppression, or hindering of a criminal prosecution which should suffice as a reason for public policy declaring the note unenforceable. When a criminal act causes only a monetary loss, what logical reason demands that we taint with illegality, an agreement to repay that loss? There is a strong desirable social motive for every father to make amends and rectify his son's defalcations.

The instant case is not to be confused with one of blackmail or extortion nor with cases in which a criminal gives his promissory note in consideration of another's promise to destroy evidence, or falsify testimony, etc. My sixteen years' experience on the Board of Pardons supports my belief that in this type of case it is far more desirable to allow the father to attempt to rehabilitate his son, than to demand that the State exact punishment. Private restitution is the honorable thing to encourage. A penitentiary sentence is costly to the taxpayers and does not always

further the public welfare. An interesting commentary is found in the Restatement of Contracts, Section 548.

Section 548:

"(1) A bargain in which either a promised performance or the consideration for a promise is concealing or compounding a crime or alleged crime is illegal.

"(2) Where an act is a crime and also creates a claim for damages, *a bargain for the settlement of that claim is not illegal* whether or not prosecution has begun. (Italics added.)

"Illustration:

"A embezzles money from his employer B. A's father C, gives B a note for the amount embezzled in consideration of B's promise not to prosecute A. The bargain is illegal and neither party can recover for its breach. If C had given the note in satisfaction of B's civil rights against A in the hope that B would not prosecute but without any agreement to that effect, C's note would not be illegal, although B refrains from prosecuting as a consequence of receiving it."

It is difficult to determine when the maker of the note gives it in consideration of a promise not to prosecute, or when he gives it in hope thereof, but I believe that this case should be governed by subsection 2 of the above-stated rule. This same view is expressed in the 1951 edition of Corbin on Contracts, section 1421.

"Bargains to stifle a prosecution are most commonly made by those who have suffered a tortious injury at the hands of the criminal offender. The injured party feels justified in putting pressure on the wrongdoer to compel a settlement; and often the most effective pressure is by a threat of criminal prosecution accompanied by a promise of forbearance if settlement is made. The injured party is fully justified in bringing a civil action for damages and in threatening such an action; and there is nothing wrong in his assenting to an accord and satisfaction of his civil claim or to an accord executor providing for its satisfaction in the future. His forbearance to bring such an action or his promise of such forbearance is a valid and sufficient consideration for a return promise.

"One who has been injured by the criminal act of another, as when his money has been embezzled or goods stolen, may lawfully

threaten prosecution for the offense. Nor is a bargain for the settlement of the civil claim for damages made illegal by the mere fact that prosecution was threatened, or by the fact that the wrongdoer agreed to the settlement with the hope that prosecution would be avoided thereby, or by the fact that prosecution did not in fact follow. The settlement agreement is made illegal only when a consideration is given in exchange for actual forbearance to prosecute or for a promise of such forbearance.

"Nevertheless, it is not safe to threaten prosecution as a means of inducing settlement of a civil claim. This is especially true when the settlement is made, not by the guilty party himself but by his parent or other close relative. When threats have been made it is easy to infer that the settlement was in exchange for forbearance or a promise thereof; and the bargain is just as illegal when the agreement is implied as when it is express. Moreover the threats readily shade into improper duress; and if it turns out that the threatened party was in fact innocent, the transaction may have the appearance of blackmail."

Further authority may be found in 17 Am. Jur., page 894, Duress and Undue Influence, Sec. 19; Annotations at 17 A. L. R. 325 and 32 A. L. R. 422. The rule is stated in the latter A. L. R. annotation at page 427 that a contract to repay embezzled money in consideration of an agreement express or implied, to conceal the embezzlement, not to prosecute, or to stifle the prosecution, is invalid.

Comparison of the Restatement Rule and the language quoted in Corpus Juris Secundum, supra, reveals that the difficult problem in these cases is reconciliation of the contract and criminal concepts involved. This, because the maker and the accommodation party sign the note with a dual motive; repayment of the legal debt as well as prevention of prosecution. Rather than attempt to ascertain the most forceful motive, I believe that public policy should declare the note to be valid and given for a legal consideration where there exists a prior legal debt for which the note was signed as evidence. In cases where a valid acceptable motive exists, the presence of any so-called illegality or a motive allegedly contrary to public policy, should not render the note voidable at the election of the party who

is liable thereon. A plea of fraud or duress may always be interposed to protect those parties who are deserving of such defenses. But I see no purpose in allowing either Frank Berryessa or his father to plead the defense that this note is given for a promise which is against public policy.

If the prosecuting authorities take the view that the Indemnity Company has compounded a felony or committed some criminal act, let exposure to criminal prosecution be the deterrent factor to the execution or obtaining of such instruments—not a civil rule of law declaring the note invalid because given for an illegal consideration. The truth of the matter is that we are permitting a defendant to plead that he committed a crime in compounding a felony so as to escape civil liability, and we can expect that if he were prosecuted, which seems highly improbable, the legitimate motive of repaying the debt would there be asserted.

In every case, a father or relative who signs a note in order to repay embezzled money will naturally do so with the criminal consequences uppermost in his mind. The signator's concern over the possibility of prosecution will always be present. Hence it requires little or no falsification for him to testify that the only reason he signed was to prevent the embezzler from going to prison or that he signed because of the agreement, normally implied, that the bonding company or employer would not press charges. I disagree with the rule of law that permits the note to be found invalid because it was signed for this allegedly illegal motive, asserted at the time of trial. The note should not be held to be unenforceable as against public policy. The only defense should be that of duress, that he signed under threats of prosecution. Otherwise it allows the defendant to act the role of initiator in obtaining the agreement and thereafter repudiate it because he obviously acted to prevent the embezzler from being prosecuted. The prosecuting attorney will prosecute, if charges are pressed. He will not act as a collection agency for every employer, victim of an

embezzlement or of a bad check cashed. The bonding company is interested in recouping its loss. It is the unanimous general rule that a contract to repay the embezzled money is not of itself invalid. 32 A. L. R. 422. Yet we hold the note to be worthless because of the inevitable background of facts; a crime has been committed and both parties are more desirous of seeing the debt paid than putting the offender in jail. I would reverse the case for error in the instructions which allowed the jury to find that the note was against public policy.

Nothing said by this court in *Payson Building & Loan Society* v. *Taylor*, 87 Utah 302, 48 P. 2d 894; *Fox* v. *Piercey*, 119 Utah 367, 227 P. 2d 763, or *Ellison* v. *Pingree*, 64 Utah 468, 231 P. 827, indicates that we have yet adopted as public policy the rule herein stated.

HENRIOD, J., concurs with the concurring-dissenting opinion of WOLFE, C. J.