**Pharmaceuticals, Inc., v. Hess Brothers, Inc.**

*Bernard Frank* and *Robert H. Jordan,* for plaintiff.

*Boyd H. Walker* and *Theodore R. Gardner,* for defendant.

SCHEIRER, J., December 13, 1960.—Pharmaceuticals, Inc., now known as J. B. Williams Co. Inc., has brought this complaint in equity to enjoin Hess Brothers from selling J. B. Williams Co. products at less than listed fair trade prices . . .

Defendant introduces a defense, novel in this Commonwealth in fair trade cases, that plaintiff, a foreign corporation, having failed to register with the Secretary of the Commonwealth in accordance with the provisions of the Act of May 5, 1933, P. L. 364, art. X, sec. 1001, 15 PS §2852-1001, has no standing in our court. The act provides that, if the entire business operations of the corporation within the State are within the protection of the Commerce Clause of the Federal Constitution, a certificate of authority is not required. It is our opinion that the testimony in this case reveals nothing which would indicate that plaintiff is engaged in intrastate commerce rather than interstate commerce. Paragraph 1014 of the above act, as amended, protects the validity of any contract with a foreign corporation not registered, but restricts action or recovery on such a contract until a certificate is obtained. The need for registration by plaintiff revolves around the question: Was it "doing business" within this State?

The court in Commonwealth v. Andrews, 42 D. & C. 505, considering an assessment for corporate franchise tax reviewed the principles involved in "doing business" in the following language:

"The circumstances that constitute doing business by a foreign corporation are circumstances that commend to common sense. Yet 'doing business' is a confused concept. Circumstances are facts and, each case having its own, decisions must vary.

" 'It is evident . . . that the decision in each instance must depend upon the particular facts before the court': Von Baumbach v. Sargent Land Co., 242 U. S. 503, 516 (1917).

" '. . . the question, whether or not the company is doing business within the State is one of fact not necessarily depending solely on single acts, or on the effect of single acts, but on the effect of all the combined acts': Commonwealth v. Wilkes-Barre & Hazleton R. R. Co., 251 Pa. 6, 10 (1915). . . .

"Confusion is also due to the variety of purposes for which the phrase is used, and the consequent variety of interpretations which logically follow therefrom. ' "Doing business" for purposes of taxation; doing it within a statute requiring licenses, and doing enough business to justify the service of process are quite different things': Fletcher, Cyclopedia of the Law of Private Corporations (Perm. Ed.), vol. 18, §§8712, 8804; and see authorities there cited. See also, Stradley & Krekstein, Corporate Taxation and Procedure in Pennsylvania (1940), vol. 1, §161. These distinctions must have been in the legislature's mind ('doing business in and liable to taxation') and have been recognized and alluded to by the Supreme Court of Pennsylvania. Where the question before the court was whether or not a foreign corporation was doing business within the State so as to be subject to service of process, our Supreme Court said:

" 'Decisions relating to taxing, licensing or to state laws that impede the free flow of interstate commerce do not control the question of service of process . . . The degree of business activity must be greater in taxing and other situations: 25 Columbia Law Review 1018': Shambe v. Delaware & Hudson R. R. Co., 288 Pa. 240, 245 (1927). See also Callery's Appeal, 272 Pa. 255, 267, 268 (1922)."

From the above it is clear that "doing business" has several meanings dependent upon the particular statutory regulation involved. Hoffman Construction Company v. Erwin, 331 Pa. 384, was concerned with a New Jersey corporation suing in assumpsit to recover for work done in Pennsylvania. Plaintiff was challenged for failure to register as required by section 1001 of the Act of May 5, 1933. The court, at page 386, said:

"The purpose of the Act of 1933, supra, is to bring foreign corporations doing business in this State within the reach of legal process. The act is for the protection of those with whom such corporations do business or to whom they may incur liabilities by their wrongful acts. It is also to bring such corporations within our tax laws. There is no logical reason why a foreign corporation should be allowed to avoid these requirements, even though it entered the State only to perform one contract. The legislature may place such restrictions on foreign corporations entering the State to do business as it deems necessary, so long as they do not interfere with the Federal Constitution.

"In the instant case, while the plaintiff's place of business was in New Jersey, the contract contemplated not a single act, but a continuing project within this State for at least four months. Plaintiff's agents and employees were here to supervise and do the work, employ labor and purchase materials. New obligations were incurred as the need arose. The acts which were done in this State were not a mere incident of plaintiff's corporate existence, but were the performance of the very function for which the corporation was organized. The fact that part of its capital, as represented by wages, trucks, tools, etc., was not permanently invested here is of no consequence: cf. West Jersey Ice Mfg. Co. v. Armour & Co., 12 Pa. Superior Ct. 443.

"The above factors bring the instant case directly under the decision of this court in the case of Delaware River Quarry Co. v. Bethlehem & Nazareth Pass. Ry. Co., 204 Pa. 22. There a New Jersey corporation entered this State without registering and spent six months constructing ten miles of electric railway. It brought in its agents and workmen, used nearly all its capital here, and created new obligations day by day. It was not allowed to sue. . . ."

It will be seen that, while under certain circumstances the performance of but one contract in this State may require registration, it should also be observed that "the acts which were done in this state were not a mere incident of plaintiff's corporate existence, but were the performance of the very function for which the corporation was organized." We emphasize this in view of defendant's contention that plaintiff's entry into fair trade contracts in Pennsylvania was "doing business." Entering such contracts, unlike one calling for the performance of services in Pennsylvania, were in our opinion "a mere incident" and not the performance of the corporate function.

The traditional tests of "doing business" before jurisdiction can be acquired over a foreign corporation are enumerated in Shambe v. Delaware & Hudson R. R. Co., 288 Pa. 240, at pages 246, 247: "(1) The company must be present in the State, (2) by an agent . . . (3) duly authorized to represent it in the State . . . (4) the business transacted therein must be by or through such agent . . . (5) the business engaged in must be sufficient in quantity and quality . . . (6) there must be a statute making such corporations amenable to suit." The court also commented: "The term 'quality of acts' means those directly, furthering or essential to, corporate objects, they do not include incidental acts: . . . By 'quantity of acts' is meant

those which are so continuous and sufficient to be termed general or habitual. A single act is not enough: ... Each case must depend on its own facts, and must show that the essential requirement of jurisdiction has been complied with."

Plaintiff has no sales office or salesmen, owns nor leases any real estate and has no employes in Pennsylvania. It sells its products primarily through distributors and chain stores. No evidence was submitted that an agent represented plaintiff in Pennsylvania. Applying the tests of the Shambe case and the principle of the Hoffman case, it is clear to us that plaintiff is not "doing business" necessitating a certificate of authority.

Our attention has been called to the case of Florio v. Powder Power Tool Corp., 248 F. 2d 367, but the situation there was not comparable with ours. The foreign corporation had entered a highly restrictive contract with distributors in Pennsylvania which gave it substantial control over the business of the distributor, thus bringing itself within the State jurisdiction. No such restrictive contracts were shown in the instant case.

Also, Eli Lilly & Company v. Sav-on Drugs, Inc., 57 N. J. Super. 291, 154 A. 2d 650, which was a suit in equity by an Indiana corporation to compel defendant to comply with minimum fair trade prices, can be distinguished. Plaintiff maintained an office in New Jersey with its name on the door and on the tenant registry in the lobby of the building. Plaintiff was listed in the telephone directory. The lessee of the office was plaintiff's district manager who was reimbursed for office expenses. There was a secretary in the office paid by plaintiff. There were 18 "detailmen" under the manager's supervision paid by plaintiff. Under these facts, the court held that plaintiff was "doing business" in New Jersey. Our facts fall far

short of those in the case cited, and the decision is not helpful to defendant.

Counsel for defendant would rely on a "whereas" clause in the fair trade contract between plaintiff and a Pittsburgh pharmacy as an admission that plaintiff is "doing business" in Pennsylvania. The words "and whereas the states where the parties do business have adopted statutes popularly known as 'Fair Trade Acts', etc." cannot seriously be considered the basis of determining the far-reaching conclusion that plaintiff is engaged in "doing business." Plaintiff is doing business in Pennsylvania in the sense that its products are sold here, but this is among the most minute considerations in the over-all picture of ascertaining the need for registration.

On November 10, 1959, section 1011 of article X of the Act of May 5, 1933, P. L. 364, was amended as subparagraph c, captioned "Service of process upon the Secretary of the Commonwealth." The amendment provides:

"For the purposes of this section, the entry of any corporation into this Commonwealth for the doing of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose, with the intention of thereby initiating a series of such acts, shall constitute 'doing business' ": 15 PS §2852-1011.

Without discussing the effect of the language of the amendment on the question of "doing business" in this Commonwealth, we would point out first, that the date of enactment is subsequent to the date of filing of the complaint in this action, and, second, that the amendment applies only to service of process on foreign corporations sued here and has no reference to the right of a foreign corporation to institute suit. The courts have applied the principles on "doing busi-

ness" in the former situation to the latter, but this would not, in our opinion, include a legislative provision clearly intended to cover only the service of process. . . .

*Decree Nisi*

Now, December 13, 1960, defendant, its agents, executives, officers, employes, successors, assigns and all persons acting by, through, for or in behalf of said defendant, are permanently enjoined and restrained from advertising, offering for sale or selling products of plaintiff known as Aqua Velva and Geritol Tablets at less than the prices stipulated pursuant to plaintiff's retail fair trade contracts in force and effect with other retailers of plaintiff's products in the Commonwealth of Pennsylvania, and defendant is further permanently enjoined from making any allowances, gifts, rebates or concessions with the advertising, offering for sale or selling of the products mentioned and otherwise from violating the terms and conditions of the fair trade contracts, the subject of this suit. Costs will be upon defendant.

Now, December 13, 1960, it is ordered that the above adjudication be filed, that notice of its filing be served upon counsel for the respective parties and if no exceptions are filed within 30 days of said service, the foregoing decree nisi shall be entered as the final decree. Meanwhile, the preliminary injunction heretofore entered shall continue in full force and effect.