[Civ. No. 3945. Third Appellate District.—September 13, 1930.]

IDA L. JUSTICE, Executrix, etc., Respondent, v. INTER-OCEAN CASUALTY COMPANY (a Corporation), Appellant.

J. Hampton Hoge and Chester O. Hansen for Appellant.

William N. Graybiel for Respondent.

MR. PRESIDING JUSTICE FINCH DELIVERED THE OPINION OF THE COURT.—This is an appeal by the defendant from a judgment in favor of the plaintiff in an action on a policy of accident insurance, insuring plaintiff's deceased husband "against death or disability resulting directly, independently, and exclusively of all other causes from bodily injuries effected solely through external, violent and accidental means". ▮ In appellant's opening brief it is said: "The question in this case is as to whether Mr. Justice died from the result of an alleged skull fracture sustained in the accident or whether he died from a stroke of apoplexy." This statement is not quite accurate, because, even though the immediate cause of death may have been apoplexy, if the apoplexy itself was caused by the injuries received in the accident, then it would follow that such injuries were the proximate cause of the death.

The evidence shows that the deceased, who was of the age of sixty-five years and weighed two hundred pounds, had driven a Ford automobile for about seven years, but that on the day of the accident he was driving an Oakland coupe, that being the second time only that he had driven that make of automobile. A witness for the plaintiff testified that on the day of the accident, prior to its occurrence, "I went out with him . . . towards Gustine. Q. Did you go in his car? A. Yes, sir, the second time he

ever went to Newman with that car. . . . But I was afraid; I told Mr. Justice, I think the machine was working all right but to go a little.slow. . . . Sometimes he went fast; . . . I don't think he could handle the brakes, it was a new car for him, you see. Q. Had you ever ridden with him in any other car? A. In the Ford. He used to drive it good. . . . Q. He was having trouble managing this new car? A. Yes, that day."

The only witness who saw the accident, who was driving an automobile in the opposite direction from that in which the deceased was going, testified: "As he made the turn (in the road), he came out on the dirt road (on his right) and almost turned over, and as quick as he turned he shot right across the road (to his left) in front of us into the embankment. . . . Q. There is a slope from the road level down to the embankment? A. Yes. Q. What was the condition of the dirt on the right side of the pavement as he approached you? A. It seemed to be loose. . . . Q. Before you saw the car turn, was the occupant sitting up or sloping in the car? A. He was sitting up at the steering wheel. Q. Sitting up directly behind the wheel? A. Yes sir. Q. Was that his position, so far as you could see, from the time you first saw him until he hit the embankment? A. Yes sir. . . . The instant that it struck the embankment, the (right) door opened and he fell out head first. . . . He fell out on his head and turned over with his feet toward the embankment. . . . Q. You said 'turned over.' You mean he did, not the automobile? A. No, he turned. . . . Q. You described that you thought the car was coming rapidly, I believe. A. Yes sir."

█ Appellant urges two grounds for a reversal of the judgment: "First, that the plaintiff is bound by the statement as to the cause of death contained in the proof of death," and "second, the evidence is insufficient to support the findings and the judgment." The statement in the proof of death referred to is one made by the attending physician, and consists of answers to questions contained in blanks furnished by the defendant. A statement by the attending physician was required by the defendant. The plaintiff is not to be held, by mere compliance with such requirement, to have adopted as her own the recitals or declarations contained in such statement. (*Mar Shee* v.

*Maryland Assur. Corp.*, 190 Cal. 1, 6 [210 Pac. 269].) In the plaintiff's affidavit attached to the proof of death she states that the facts stated therein ''are true of her own knowledge; except as to she does not know the cause of death or what caused the automobile accident, which she has knowledge of from information and belief, and that as to such matters she verily believes the same to be true, except she does not accept all of the statements of the doctor as true facts.'' Appellant's contention that the plaintiff is bound by the statements of the attending physician is clearly without the slightest merit.

The statement in the attending physician's report, on which the appellant relies, is as follows: ''What was the precise nature of the injury and its extent? Answer. Apoplectic attack (cerebral hemorrhage on right together pontine hemorrhage—2 days). In my opinion this caused him to become stuporous and dazed thus resulting in the loss of control of his car. There were no blood cells in the spinal fluid indicating probably no fractured skull.'' This physician, as a witness for the defendant, gave testimony to the same effect at the trial. He testified: ''A spinal puncture was done some time before he died to determine absolutely whether there was any blood in the spinal fluid or not. Q. What did you find with reference to that? A. No red blood cells at all. Q. And that indicates what? A. Probably no fracture of the skull. . . . One of the best signs that we have outside of the other clinical evidences. . . . I went over his skull with my fingers and explored his skull, attempting to find any changes in resonance or areas or lines of tenderness. Q. Isn't this true, that there are what we may speak of in common, layman language, as two layers of the skull? A. Yes sir. Q. And there may be an inner fracture and not show on the outside? A. Sometimes. . . . Q. There was no post mortem taken? A. None. . . . Had we anticipated any legal extanglements or anything like that, I should have insisted upon it, but not knowing about an insurance company being involved from an action standpoint none was requested.'' It thus appears, from the physician's own statement, that his examination was by no means thorough.

A physician called as a witness by the plaintiff testified that in cases of fractured skulls red blood cells sometimes

appear in the spinal fluid and sometimes not, "depending upon the location of the fracture"; that "it is very common to fracture the inner table (of the skull) without showing on the outside"; that "evidently there was blood in the spinal fluid, he (the attending physician) said he had a pontine hemorrhage and that means a hemorrhage into the spinal cord." Based on the evidence given at the trial, including that of the attending physician, this witness testified that in his opinion the deceased died from the injuries received in the accident, later saying, "I have here all these symptoms and I stated that in my opinion the probable cause of death was an injury received at the time of the accident."

 It is unnecessary to set out the evidence in further detail, enough thereof having been stated to show a clear conflict therein, and that there is ample evidence to support the finding that the death of the deceased was caused by injuries received in the accident.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 13, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 10, 1930.