## RYAN v. UNION PAC. R. CO.

No. 2713.   Decided July 30, 1915.   (151 Pac. 71.)

1. RAILROADS—INJURIES TO PERSONS ON TRACKS—ACTIONS—EVIDENCE. In an action for the death of one run down by cars being switched, evidence *held* to warrant findings that the railroad company and deceased were both negligent. (Page 535.)

2. RAILROADS—INJURY TO PERSON ON TRACK—PRESUMPTIONS—CARE. It will be presumed that deceased, who was run down by defendant's cars, was in the exercise of due care. (Page 535.)

3. RAILROADS—INJURIES TO PERSONS ON TRACKS—CONTRIBUTORY NEGLIGENCE—JURY QUESTION. In an action for the death of one run down by cars on a switch track, the question of deceased's contributory negligence *held* for the jury. (Page 535.)

4. TRIAL—INSTRUCTIONS—PROVINCE OF JURY—WEIGHT OF EVIDENCE. Both persons walking upon industrial switch tracks and the railroad company which pushes cars thereon are bound to exercise ordinary care, but it is for the jury to say whether such care was exercised in view of the frequency of the use of the tracks; hence a charge, requiring the jury, if the track was used infrequently, to demand more care of the railroad company and less of the individual using it, is improper as on the weight of the evidence.   (Page 538.)

5. EVIDENCE—RAILROADS—INJURIES—PRESUMPTIONS—EFFECT. Presumptions are effective only when the facts do not appear; hence where the facts surrounding the running down of plaintiff's

intestate did appear, the jury, in determining his negligence, should not consider the presumption of due care from the instinct of self-preservation.    (Page 538.)

6.  RAILROADS—INJURIES TO PERSONS ON SIDINGS—LAST CLEAR CHANCE DOCTRINE—EVIDENCE. In an action for the running down of plaintiff's intestate on a siding, *held* that under the evidence it was a question for the jury whether his position of peril was discovered, and hence it was proper to submit the last clear chance doctrine.    (Page 539.)

7.  RAILROADS—INJURIES TO PERSONS ON TRACKS—LAST CLEAR CHANCE DOCTRINE.  While the last clear chance doctrine is applicable in a proper case where the perilous position of the party could or ought to have been discovered, a railroad company is not liable for running down plaintiff's intestate on an industrial switch track where he, up to the moment of the accident, was negligent in failing to look for and discover the train, though the accident was also the result of the concurring negligence of the railroad company in failing to maintain a lookout, for an opposite holding, would in effect, destroy the defense of contributory negligence.    (Page 540.)

Appeal from District Court, Second District; Hon. *N. J. Harris,* Judge.

Action by T. D. Ryan, as administrator of the estate of Kantara Yoshitake, deceased, against the Union Pacific Railroad Company.

Judgment for plaintiff.   Defendant appeals.

REVERSED and REMANDED.

*P. L. Williams* and *Geo. H. Smith,* and *C. R. Hollingsworth,* for appellant.

*J. G. Willis* for respondent.

## APPELLANT'S POINTS.

The deceased was under the duty of attentively looking and listening before he went upon the tracks in question, to discover whether or not a train was approaching from either direction, and if by so doing he could have discovered that

one was approaching, as in fact it was, his conduct demonstrates either that he did not look at all, or if he did look, he did not heed what he saw or what was to be seen. (*Burges* v. *Salt Lake City Ry. Co.*, 17 Utah 406; *Johnson* v. *R. G. W. Ry.*, 19 Utah 77; *Silcock* v. *Rio Grande*, 22 Utah, 179; *Rogers* v. *R. G. W.*, 32 Utah, 267; *Teakle* v. *San Pedro, etc.*, 32 Utah, 276; *Wilkinson* v. *O. S. L. R. R.*, 35 Utah, 110; *Pratt* v. *U. L. & Ry. Co.*, 38 Utah, 500; *Bates* v. *S. P., L. A. & S. L. R. R.*, 38 Utah, 568; *Oswald* v. *U. L. & Ry. Co.*, 39 Utah, 245.)

In *Jensen* v. *D. & R. G.*, Supreme Court of Utah, decided January 30, 1914, 44 Utah, 100, 138 Pac., 1185, this court specifically held in discussing the last chance doctrine that it did not apply and could not be invoked in a case where the negligence of the plaintiff or deceased was contemporaneous and concurring with the defendant's negligence. (34 L. R. A. (N. S.) 957, and monographic note; 55 L. R. A., 418, and monographic note; *Dyerson* v. *R. R. Co.*, 87 Pac., 680, 7 L. R. A. (N. S.) 132; *Kirtley* v. *C. M. & St. P. Ry. Co.*, 65 Fed., 386; *Railroad Co.* v. *Bailey*, 27 L. R. A. (N. S.) 379 (Va.); *Wilson* v. *Railway Co.*, 129 N. W. (Iowa) 340; *Bruggeman* v. *Railroad Co.*, 147 Iowa, 187; 123 N. W. 1007; *A. T. & S. F.* v. *Taylor*, 196 Fed., 878.)

STRAUP, C. J.

This action was brought to recover damages for the death of plaintiff's intestate, alleged to have been caused through the negligence of the defendant. The plaintiff had judgment, from which the defendant appeals.

One of the assignments presents the ruling refusing the defendant's motion for a direction of the verdict. The deceased was in the employ of a cement company at Devil's Slide. There he was run over by a train of cars operated by the defendant and killed. The charged negligence is failure to give warnings of the train's approach and to observe a lookout. The motion was based on alleged grounds that the deceased was negligent and that his, and not the defendant's, negligence was the proximate cause of the collision. At Devil's Slide the defendant's main line runs in an easterly and westerly direction. About one-fourth of a mile north of

the main line is the cement company's plant and premises. From the main line is a spur or branch track about 3,000 feet long, running as it leaves the main line for a short distance somewhat parallel with it, and then, with a pronounced curve, northerly upgrade to and beyond the plant. When it reaches the plant the spur branches into two parallel tracks close together, and so continues to the northern limits of the plant and premises. Thence on, there is again but one track. The two tracks thus running through the cement company's premises are so close together that, as expressed by one of the witnesses, there is just room enough for the passing of cars; another, that the distance from the center of one of the tracks to the center of the other is about thirteen feet. There are buildings of the cement company on both sides of the tracks, consisting of an office or laboratory building, a power house, cement plant, storage and ware houses, crushers, bins, kilns, and other buildings. These buildings, except the office building, are within three or four feet of the track. This double track thus runs between the buildings for a distance of about 600 feet. The space between the buildings, and in which the tracks are laid, is spoken of by the witnesses as a sort of an alley, the width of which, from building to building, is about twenty-four feet. The tracks are used to run empty cars to the plant and to take out loaded cars. Devil's Slide is a little town to the west and north of the junction of the main line and the spur line. Croyden is a little settlement north of the plant, and is at the terminus of the spur or branch track. There were about 150 men at work at the plant. They, and others, passed up and down and across the tracks at all hours of the day, as one of the trainmen put it, "every few minutes there would be some one cross there." Cars were run from the main line and pushed up to the plant, and loaded cars taken down every day, generally between seven and eleven o'clock in the morning. During the forenoon of the day of the accident the deceased was at work in the basement of the cement company's office, making concrete brick or blocks. That was at or near the south junction of the double tracks running through the alley or at the southern portion of the cement company's plant and premises. The distance from there south

and west, along the spur track to the main line, is about 1,500 feet. The deceased was run over and killed in the alley along the double track about 400 feet north of the office building, some of the witnesses stating between ten and eleven o'clock, others, shortly before noon. No one saw him leave the office building. He was first seen walking slowly north along the two tracks in the alley within about forty or fifty feet from the place where he was struck by the train and killed. The track to the right of him was occupied by box cars. The track to the left of him then was clear. The defendant at that time was shoving or backing a train of twenty-one cars along the spur track up towards the cement plant and premises and in the direction the deceased was walking, intending to leave eleven empty cars on the track to the left of him. The cars were forty feet in length. The engine shoving the train thus was about 840 feet from the forward car. Because of the curve and length of the train the engineer's view in advance of the forward car was obstructed. There was no one on the forward car as the train approached, nor on any of the cars, except the fireman and engineer on the engine. No whistle was sounded or other warning signals given of the train's approach. Before that, and some time before the deceased entered the track and walked up the alley, some switching of cars had been done on the premises of the cement company, cars taken from one track and drawn down and placed on the other. One of the witnesses for the plaintiff testified that when he first saw the deceased walking along the track the train was approaching him about 100 or 150 feet away, moving at about ten miles an hour in the direction the deceased was walking, and that the deceased walked about forty or fifty feet on the track on which the train was moving before he was struck. Another witness for the plaintiff testified that when he first saw the deceased the train was about fifty feet from him; that the deceased then was walking between the two tracks, and, coming to a wet or muddy place, stepped on the track on which the train was moving, and there walked twenty or thirty feet before he was struck. Both witnesses testified that the deceased was looking in the direction he was walking, and that during the time they saw him he did not

look back in the direction the train was approaching, and did not look in that direction when he stepped from between the tracks and on the track where he was struck. These witnesses endeavored to attract his attention by hallooing and shouting, but were unable to make him hear because of much noise occasioned by operations of the crushers and machinery at the plant. As the train approached the southern portion of the cement company's premises, the conductor of the train stood in front of the office building near the south junction of the two tracks and on the east side of them. On the other side stood a brakeman in readiness to cut loose from the train the eleven cars when they had been shoved up the required distance. These witnesses testified that when the forward car reached them they glanced up the track or alley, and that they then saw no one. After the forward car had passed them their view up the track was obstructed by the cars. The forward car struck the deceased just at the place where the eleven cars were intended to be placed and cut loose from the train. The deceased was instantly killed. The forward truck of the car striking him was derailed by the impact, and the derailed car jammed against a car standing on the track. The train crew had no knowledge that the deceased had been struck until one of the witnesses who testified for the plaintiff ran down and notified them.

We thus have a case where there is ample evidence to justify findings that both parties were negligent. That is not disputed. The defendant, however, urges that the question of its negligence was one of fact, and that of the deceased's was one of law, especially as to whether the deceased's or the defendant's negligence was the **1, 2, 3** proximate cause. If the defendant was negligent—and there is ample evidence to show that it was—then its negligence was a direct cause. There can be no doubt of that. The serious question concerns the deceased's negligence, whether it was for the jury or the court. Independent of evidence, the presumption should be indulged that the deceased exercised due care and did all that reasonably was required of him. No one saw him leave the building or enter the track. He was first seen walking forty or fifty feet along the track through the

alley.   One witness testified that he was walking on the track;
another, between the tracks, and that he then stepped on the
track and walked twenty or thirty feet before he was struck.
There is direct evidence that he, during that time, did not look
in the direction from which the train came.   Because of that
the defendant urges he was conclusively guilty of negligence.
The triers of fact, under all the circumstances, might say that
a failure to look back during that time, or a failure to look
when he stepped on the track if he was walking between the
tracks, was negligence.   But we ought not say that as a matter
of law.   As well say the defendant was conclusively guilty
of negligence because of its failure to give signals or to have a
man stationed on the forward car as the train approached, or
to observe a lookout, which omissions also were undisputed.
If, when the deceased first entered or was about to enter the
track, he looked for approaching cars and saw none and then
proceeded up the track, we should not say that he was conclu-
sively guilty of negligence because he did not again look
within the time the witnesses saw him.

There is no direct evidence to show at what place he entered
the track.   As inferences two views may be taken.   One is
that he entered the track near, or opposite, the office building
where he was at work at the south junction of the two tracks;
the other, that he entered the track from one of the buildings,
or a place between them, farther up the track.   If he entered
the track opposite the office building he walked along the track
a distance of about 400 feet before he was struck.   While the
record shows that switching had been done about the cement
premises shortly before the accident, yet, if the deceased en-
tered the track opposite the office building, the record does not
show where the train then was.   It may have been down by
or near the main line, a distance of about 1,500 feet away,
and not in view.   The deceased thus may have looked when
he entered the track, and, seeing nothing of the train, may
have thought the switching was over, and that the train had
departed.   He was not at a place where a train might momen-
tarily be expected.   He, of course, was required to anticipate
cars during the switching period; but that usually was before
eleven o'clock.   These, of course, are inferences most favorable

to the plaintiff. If, on the other hand, the deceased entered the track but forty or fifty feet from where he was struck, then, had he looked as he entered the track, he could have seen the train approaching him. Which of these inferences ought to have been deduced was for the jury. It may be conceded as settled law that one who approaches or enters a railroad track without looking, at a place where cars may momentarily be expected, generally is conclusively held guilty of negligence. But the doctrine is not, to its full extent, applicable to the situation before us. The deceased and 150 others were at work about the plant. Their duties took them up and down and across the track at all hours of the day. That the deceased was going up the track in the discharge of duties is inferable. There was but a short period each day when cars were operated along the tracks, empty cars and cars with supplies taken up to, and loaded cars taken down from, the plant. That generally was done between seven and eleven o'clock in the forenoon; as some of the witnesses testified, usually in the morning. When that switching was over no further operation of cars was had about the plant until the next day. Just when the accident happened is, on the record, uncertain. Some witnesses testified between ten and eleven o'clock, others shortly before noon. Had the deceased not been killed, but only injured, and, in an action to recover for his injuries, had testified that he entered the track opposite the office building, that he then looked and saw no cars, and, seeing none, believed the switching was over, and that the train had departed and that he then proceeded up the track without again looking back before he was struck, the court, under such circumstances, would hardly be justified in holding him guilty of negligence as matter of law. Since all that, on the record, is inferable we think the question of the deceased's negligence was one of fact and not of law, and that the court, therefore, did not err in refusing to direct a verdict for the defendant.

Complaints are also made of the charge. As to the defendant the court charged:

"You are instructed that if you should find, by a preponderance of the evidence that the train in question was oper-

ated along and over a railroad track of which infrequent use was made, it was more incumbent upon the defendant, when so doing to give warning of said train's approach than if it had been a track of regular and frequent use, and running on regular time.''

As to the plaintiff the court gave this:

''You are instructed that if the railroad track upon which the train in question was operated at the time of the injury to said decedent was a track of infrequent use, the decedent would not be expected to exercise the same degree of caution in passing over said track, as if it were a railroad track of frequent and regular use.''

We think both are erroneous. Of course the frequency or infrequency with which cars are operated over the track had a bearing on the care to be exercised by the parties, and was a factor of more or less weight in determining such question. But the court, in such respect, charged on the weight of the evidence, and bound the jury to give not an evidentiary, but a legal, effect to it—required them if the track was used infrequently to demand more care of the defendant and less of the deceased. The standard of both was ordinary care. When the court stated that, and defined what was meant by it, its duty in that regard was discharged. It then was within the province of the jury, in view of the infrequent use of the track, and of all other evidence bearing upon the question, to say whether what the parties, did, or failed to do, did or did not, come up to that standard.

The court also gave this:

''You are instructed that the instinct of self-preservation and the disposition of men to avoid personal harm re-enforce an inference that a person killed or injured was in the exercise of ordinary care, and that the natural instinct which leads men in their sober senses to avoid injury and preserve life is an element of evidence to be considered in connection with the other testimony in this case.''

In the absence of evidence there is a presumption that the deceased used due care and, for his protection, did all that reasonably was required of him. Had the court charged that and stopped, the charge would not have been erroneous. When,

however, facts and circumstances are proven to show just what the deceased did, or failed to do, then his care, or the want of it, is to be determined, not on the presumption, but upon the facts and circumstances proven. That is, whenever the facts or circumstances are shown concerning which the presumption is indulged, the presumption ceases, and the controversy is to be decided by the weight of the evidence adduced. That is not. what the court charged. As charged, the jury were permitted to cast the presumption on the scales and to consider and weigh it with the proven facts and circumstances. There is a presumption of sanity, but when evidence respecting the sanity or insanity of the person whose mental condition is the subject of inquiry is adduced, the presumption, except as it bears on burden of proof, is spent and the controversy is to be decided on the weight of the evidence adduced. There, as here, the presumption calls for evidence; but when it is adduced the controversy must be decided on the evidence, not on the presumption. Here the court, regardless of what facts were proven as to the deceased's conduct, in effect charged that the presumption itself was evidence to be considered in connection with the proven facts. That was wrong.

The court submitted the case on the theory of the last clear chance doctrine, and, in substance, charged that though the deceased was negligent, and though his negligence ''directly contributed to the injury,'' yet, if the defendant was also negligent and if after discovering the deceased in a perilous situation, or, in the exercise of ordinary care, could have discovered him in a place of danger, and that the defendant failed to exercise ordinary care to prevent the collision, then the defendant's negligence was the proximate cause of the injury and death. The doctrine rests on premises that both parties are negligent and relates to the question of which negligence is to be regarded as the proximate and which the remote cause. When it is assumed, as does the charge, that the injured's or deceased's negligence ''directly contributed to the injury,'' that is, was a direct cause, a cause as direct as that of the offender, then that is the end of the inquiry, and renders any further charge on the doctrine inapplicable. Though the deceased was negligent in walking up the track

without looking within the time the witness saw him, and in failing to discover the train's approach, and if, as assumed in the charge, his presence in a perilous situation was discovered by the train crew in time to have avoided the collision, but who failed to use reasonable efforts to prevent it, then the defendant's negligence may be regarded the proximate and the deceased's the remote cause. There, however, is no direct evidence that his presence was discovered by the train crew. The conductor and brakeman testified that when the train was about 400 feet from the place of the accident, they looked up the track and saw no one. Their view, after that, was obstructed by the forward car as it passed them and went up the track. If the deceased entered the track opposite the office building, and if the conductor and brakeman looked up the track as testified to by them, it can be argued that they must have seen him. Others saw him when the train was 100 or 150 feet from him. Another saw him walking slowly up the track forty or fifty feet before he was struck. If the train moved ten miles an hour, as testified to by members of the train crew, it traveled approximately 200 or 250 feet while the deceased walked forty or fifty feet. True, it may also be argued and inferred that the deceased entered the track not opposite the office building, but farther up the track, and after the forward car had passed the conductor and brakeman. There thus is little indirect evidence that the deceased was discovered by the train crew. But weak as it is, we think the plaintiff was entitled to go to the jury on the theory that the deceased was discovered.

The court, however, submitted the case also on the theory that, though the train crew had not discovered the deceased, yet, if they, in the exercise of ordinary care, could have discovered him in time to have avoided the collision, and, omitting to exercise that care, failed to discover him, then the defendant's negligence was the proximate cause. In this the court also erred, not because the doctrine is applicable only to cases after discovery, for we are committed to the rule that the doctrine, in a proper case, is also applicable where the perilous situation of the party injured could or ought to have been discovered, but, because the assumed neg-

ligence of both parties was, in such respect, active, concurring, combining, and contributing at the very time of the impact, and the one as direct and proximate as the other; that is, if the defendant be found guilty of negligence in not giving signals of the train's approach, or in not observing a proper lookout to discover the presence of those reasonably expected to be on or near the track and in danger of being struck by moving cars, and if the deceased, as he was walking along the track, also be found guilty of negligence in failing to look for and to discover the train's approach, then the negligence of both was active and concurring up to the very time of the impact, and the collision the result of the combined and concurring negligence of both, and the one as direct and proximate as the other. In such case the most that could be said is as to which negligence, when the one is compared with the other, was the greater or more culpable. But the doctrine of comparative negligence does not prevail in this jurisdiction, and is not to be confused, as it sometimes is, with the doctrine of the last clear chance. The rule here is that contributory negligence, if it is a direct and contributing cause, bars recovery. When the court charged, as it did, that if the defendant was guilty of negligence, and though the deceased was guilty of contributory negligence, and that "the negligence of each directly contributed to the injury," yet, if the defendant, in the exercise of ordinary care, could have discovered the deceased in a position of peril in time to have avoided the injury, then the defendant's negligence was the proximate and the deceased's the remote cause, it in effect destroyed the defense of contributory negligence and gave a charge inconsistent with another that, though the defendant was negligent yet, if the deceased "was also negligent in any respects in the performance of his own duty, and that neglect contributed in any degree to his accident and death, the plaintiff in this case cannot complain that the defendant was also negligent, but your verdict in such event must be for the defendant."

For these errors the judgment is reversed, and the case is remanded for a new trial. Costs to the appellant.

FRICK and McCARTY, JJ., concur.