[Civ. No. 7883. First Appellate District, Division Two.—August 10, 1931.]

JONAS CLARK, Respondent, v. WILLIAM BOWERS et al., Appellants.

Bohnett, Hill & Campbell and L. R. Schellbach for Appellants.

D. T. Jenkins and E. D. Crawford for Respondent.

STURTEVANT, J.—The plaintiff was injured by being struck by an automobile which was at the time being driven by one of the defendants but which was owned by the other defendant. The defendants answered and a trial was had before the trial court sitting with a jury. The jury returned a verdict in favor of the plaintiff and fixed his damages in the sum of $1,000. The plaintiff made a motion for a new trial and thereafter the trial court granted the motion on the ground that the evidence was insufficient to sustain the verdict. From that order the defendants have appealed and have brought up typewritten transcripts.

The accident occurred in the city of Gilroy. Monterey Street runs north and south and is a part of the highway leading from San Francisco to Los Angeles. Fifth Street runs east and west. Its eastern end terminates in Monterey Street. Fifth Street is thirty feet wide and Monterey Street is sixty feet wide. A button indicates the center of the intersection. The sidewalks of Fifth Street if pro-

longed across Monterey Street are indicated by lines marked on the pavement to indicate the crossings for pedestrians. On the night of December 26, 1929, at about 7:15 P. M., the plaintiff was in the act of crossing Monterey Street and was walking toward the east. When he had passed the button the automobile came out of Fifth Street, started to. turn to the left into Monterey Street, and, as it was doing so, it hit the plaintiff. During the trial the plaintiff took the stand as a witness in his own behalf. Among other things, he testified: "I had a little bundle in my hand (a little purchase that I had made) and I stepped off the curb, started to go across, and looked north and south as soon as I could see past the parked cars there and see that the pedestrian's way was clear. I looked frequently as I was passing along to see that the road was clear. I looked north and south and saw no one within approaching distance before I stepped into the pedestrian lane. I looked both ways north and south. As I started to go across on the pedestrian's crossing I slowed up a bit so that I could look past the parked cars both north and south. I didn't stop entirely. I simply slowed up and I looked north and south. There was no obstruction that interfered with my seeing to the south. Nor to the west. The west was behind me. I couldn't see out of the back of my head you know. I didn't look behind me." The plaintiff also called Raymond Taylor, one of the intimate friends of the plaintiff's son. That witness stood on the sidewalk on the west side of Monterey Street talking to some acquaintance but with his eyes resting on the plaintiff as the plaintiff attempted to cross Monterey Street. Among other things, he testified: "I saw the whole accident. Dr. Clark was about six feet past the button in the safety zone, where they turn at the intersection on a line with that button, six feet past it east, on the east side of Monterey street. When this car came around the corner it struck him on the right side, kinda from Dr. Clark's back. It must have struck him around the thigh from what I could see. When he got to the button in the center of the street he looked north and south to see if there were any cars coming. I noticed that. That was when he got there to the button, right in that little section where it is painted safety zone. . . . He stopped there right by the button and looked to see if there was any car coming south

and north and there wasn't any car coming and he proceeded to cross, and this car came and struck Dr. Clark. It was the left side of the car that hit him—about one-third of the length of the bumper—from the left hand of the bumper. The doctor looked before he started to cross the intersection. I took particular notice and when he got to the button then he looked north and south. I guess I looked continuously while he was crossing because I saw him go right to here. I saw this car going around without stopping. There is an arterial sign there. I saw it coming this way. I could see it coming down here. The stop sign is even with the property line. I saw him coming down there, he didn't stop there." The plaintiff also called Oliver Baxter, who testified that he saw the plaintiff fall in the street. Among other things, he testified: "He was in the pedestrian's lane. He was on the east side of Monterey street. The impact was in the neighborhood of three or four feet east of the button."

The defendants make three points. ■ In their first point they contend that the plaintiff failed to prove due care on his part and in their third point they contend that the plaintiff was guilty of contributory negligence as a matter of law. In support of these contentions they emphasize the testimony that the plaintiff did not look behind him. They cite *White* v. *Davis,* 103 Cal. App. 531, 542 [284 Pac. 1086], and California Jurisprudence, 1928 Supplement, page 186, section 82. Those authorities do not support their contention. It has been directly held that one lawfully passing over or along a street is not guilty of contributory negligence because he does not look behind him. (*Burk* v. *Extrafine Bread Bakery,* 208 Cal. 105, 110 [280 Pac. 522].) ■ The second point made by the defendants is that there is no sound or legal basis for the jury to acquit the plaintiff of negligence and find the defendant guilty of negligence based on a fault common to both of them. In support of the point the defendants cite many statutory requirements that do not seem to have been involved. As to each of those requirements they claim that they committed no violation. However, they do not excuse themselves as to the case as made by the plaintiff. The city of Gilroy has an ordinance regulating traffic on the streets of that city. That ordinance was introduced in evidence. Section 8 of article III

provides: "It shall be unlawful for the operator of any vehicle to drive into any crosswalk which is marked as provided in section 5 of this ordinance while there is in such crosswalk upon the half of the roadway upon which such vehicle is traveling any pedestrian engaged in crossing the roadway until such pedestrian shall have passed beyond the path of said vehicle." The evidence introduced by the plaintiff made out a *prima facie* case by reason of the violation of that portion of the ordinance. It is therefore patent that a primary liability was established against the defendant.

From what we have said it is perfectly clear that the plaintiff introduced evidence showing that the defendants were guilty of negligence and that the case as it went to the jury did not show that the plaintiff was as a matter of law guilty of contributory negligence. ▮ There remains the question of damages. The jury awarded the plaintiff a verdict in the sum of $1,000. The defendants have quoted no evidence showing that said verdict was adequate. We must presume in the absence of a showing to the contrary that the order appealed from was properly made and therefore that the nature of the injuries suffered by the plaintiff was such that in the opinion of the trial court $1,000 was inadequate.

We find no error in the record. The order appealed from is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 8, 1931, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 8, 1931.