[Civ. No. 2351. Fourth Appellate District.—May 21, 1940.]

GEORGIE DUEHREN et al., Respondents, v. HARRY DAY
STEWART, Appellant.

Joseph A. Spray, Hervey & Holt and W. H. Abrams for Appellant.

Rorick & Cottingham and Wright, Monroe, Harden & Thomas for Respondents.

GRIFFIN, J.—This appeal was taken from a judgment rendered in favor of the plaintiffs for damages because of the death of E. T. Duehren, occasioned by defendant's claimed negligence. Georgie Duehren is the widow of E. T. Duehren, deceased, and Joseph and William Duehren are his two minor sons, aged 19 and 17 years respectively. E. T. Duehren was killed as the result of having been struck by an automobile operated by the appellant. At the time, Mr. Duehren was crossing Hill Street in the city of Oceanside, at the intersection of Sixth Street. He was walking easterly in a marked pedestrian crosswalk running east and west on the south side of the intersection. The accident occurred at about 8 o'clock P. M. on August 18, 1939. Hill Street and Sixth Street are public streets in the city of Oceanside. Both streets are 50 feet in width. Hill Street is also known as Highway No. 101. These streets cross at right angles. Hill Street runs north and south. Sixth Street runs east and west. On the southerly side of the intersection of Sixth and Hill Streets the marked pedestrian zone is 7 feet in width. There was one street light attached to a pole and extending slightly into the southeast corner of the intersection. There are two electric signs on opposite corners of this intersection. The deceased was struck by the left front fender of appellant's car,

just west of the center line of the highway. The appellant's car was at all times on the westerly side of the center line of Hill Street. After the impact the car was brought to a stop approximately within its length. There was an automobile being driven in a southerly direction at that time and place and between the car of the appellant and the westerly curb. The lights of both cars were burning. That other car was owned and operated by R. T. Watt, and riding with him was his wife, Edwina Watt. Mrs. Watt was called to testify on behalf of respondents. Mr. Watt was called by the appellant.

Mrs. Watt testified that they were driving in a southerly direction at a speed of between 25 and 30 miles per hour on the right-hand side of Hill Street; that she first observed Mr. Duehren crossing in the southerly crosswalk as they were about to enter the intersection from the north. She testified that the speed of the Watt car was not varied at all; that it proceeded at the same rate and that Mr. Duehren had ample time to and did cross safely out of its line of travel; that as they entered the intersection the car driven by appellant passed to the left of their car from behind; that it proceeded through the intersection and struck Mr. Duehren at the time he had reached within a foot of the center of the highway. She further testified that she did not see Mr. Duehren at all until he was at a point directly in front of the center of their car; that at that time he was already engaged in crossing the street and the Watt car was then north of the northern crosswalk. In other words, when first seen by the witness, the deceased was engaged in crossing the street and was already 12 or 15 feet out into the intersection. She observed him, therefore, only during a portion of his walk crossing the street. On cross-examination Mrs. Watt stated that during the period when she observed him, he walked straight ahead and didn't turn his head or look in the direction from which they were approaching.

A motorcycle officer made certain measurements at the scene of the accident and testified that he noticed 57 feet of tire marks on the street extending northerly from the rear tires of appellant's car. It was stipulated that the basic speed at that intersection was 25 miles per hour.

The only other eye-witness to the accident (Mr. Choate), called in behalf of respondent, testified that he saw Mr.

Duehren just at the instant before he was struck, and that he was walking "pretty fast".

Mr. Watt, testifying on behalf of appellant, stated that he was driving about 20 to 25 miles per hour; that when he was in the intersection a car passed him to the left going south at approximately 30 to 35 miles per hour; that he saw deceased as he stepped "off the curb" to cross the street; that during all the time he was crossing the street he (Duehren) was looking straight ahead and toward the east; that just after appellant's car passed him he heard the squeaking of brakes; that appellant's car was sufficiently ahead of him to prevent him from seeing the contact between the car and the deceased.

Appellant testified that he was traveling between 25 and 30 miles per hour and had no recollection of passing the Watt car at all; that the first time he saw Mr. Duehren was when "he was seemingly right in front of me; I judge about 25 feet"; that he put on his brakes, but was unable to stop until about a car's length after striking Mr. Duehren. The deceased was struck by the left front fender. Appellant testified that he had no opportunity to observe in which direction Mr. Duehren was looking; that the brakes on his car were in satisfactory shape and had recently been checked up; that the lights on his car were good, average lights. Deceased was dressed in a light khaki shirt, dark trousers, no coat, and wore a grey felt hat.

After submission of the case, the jury returned a verdict in favor of respondents for $18,000. There is no contention made that the judgment is excessive.

Appellant complains that it was error for the trial court to give certain instructions and to refuse to give certain requested instructions and that the trial court committed error in refusing to hold that the actions of the deceased at the time of the accident amounted to contributory negligence as a matter of law.

The record indicates that the trial judge refused to give any of the instructions asked by both plaintiffs and defendant, but instead resorted to instructions of his own. The following are the instructions given by the court which appellant claims caused a miscarriage of justice and constituted reversible error:

(a) "In passing upon the conduct of the deceased, the law indulges in a presumption for his benefit that he exercised due care for his own safety and protection. This presumption applies in a case of this nature to the actions and conduct of a person who has met his death and constitutes evidence in the case, and is to be weighed by you as against any evidence offered in contradiction thereof. Based upon this presumption, it is presumed that the deceased used proper care; that he made reasonable look-out for his own safety and protection, and that at the time he proceeded across the intersection conditions were such that it was safe to do so."

(b) "Considering further the question of the conduct of the deceased, it is the law that a person about to cross a highway is required, in the exercise of reasonable care, to look and ascertain the approach of traffic which might cause his injury or damage. With reference to the conduct of a deceased person, it is presumed that he made such observation, which presumption remains as evidence until overcome by evidence to the contrary. It is not required, however, that the pedestrian so crossing the highway at an intersection shall keep a constant watch for approaching traffic or that he shall keep a constant lookout in one particular direction, but it is required only that he keep such lookout as is reasonable, or such lookout as an ordinary, reasonable person would keep under the same or similar circumstances."

These instructions are not challenged as being an improper statement of the law but appellant argues that under the evidence as produced in the instant case, "the presumption based on section 1963, subdivision 4 of the Code of Civil Procedure has no place in the record when the evidence clearly demonstrates the action of the injured or deceased party", citing *Lindley* v. *Southern Pac. Co.*, 18 Cal. App. (2d) 550, 556 [64 Pac. (2d) 490], *Varner* v. *Skov*, 20 Cal. App. (2d) 232 [67 Pac. (2d) 123], *Rogers* v. *Interstate Transit Co.*, 212 Cal. 36, 38 [297 Pac. 884], *Young* v. *Pacific Elec. Ry. Co.*, 208 Cal. 568 [283 Pac. 61], and *Paulsen* v. *McDuffie*, 4 Cal. (2d) 111, 119 [47 Pac. (2d) 709].

It is contended that there is no conflict in the evidence as to the actions of the deceased from the time he was first observed on the sidewalk until he was struck; that he stepped down into the street and walked across the same at a moderate

gait and at no time turned his head to look in the direction from which oncoming traffic might endanger his safety; that the appellate courts have ruled "that to look and fail to see" what is perfectly obvious and apparent is negligence; that Mr. Watt testified that he saw the deceased on the sidewalk before he stepped into the street; that he saw him step into the street and that he was looking straight ahead at all times and walking at a moderate gait; that where all the facts and circumstances were proven, the court was not authorized to cast a presumption into the scales in favor of the plaintiff (citing *Ryan* v. *Union Pac. R. Co.*, 46 Utah, 530 [151 Pac. 71, 74], *Larrabee* v. *Western Pac. Ry. Co.*, 173 Cal. 743 [161 Pac. 750, 751], and *Ross* v. *San Francisco-Oakland T. Rys. Co.*, 47 Cal. App. 753 [191 Pac. 703]). Appellant does not argue that the evidence did not establish appellant's negligence. The law gave to the deceased the right of way in a marked crosswalk. The deceased undertook to cross in a marked crosswalk. The appellant not only drove at an excessive rate of speed, but passed another car at the intersection under circumstances where he could not have seen whether there were pedestrians in the crosswalk or not. That he was not keeping an accurate or sufficient lookout is conclusively demonstrated by his own statement. No witness testifying on behalf of the respondents saw Mr. Duehren at all as he approached Hill Street, nor did any of respondents' witnesses observe him until he was first seen by Mrs. Watt some 10 or 15 feet out into the crosswalk. The presumption, therefore, arose in the absence of evidence on the subject. There is therefore nothing to call that presumption to the attention of the jury unless the court did instruct them relative to its existence. The leading cases in this state upon the question of presumptions and their evidentiary force are *Mar Shee* v. *Maryland Assur. Corp.*, 190 Cal. 1 [210 Pac. 269], *Smellie* v. *Southern Pac. Co.*, 212 Cal. 540 [299 Pac. 529], and *Engstrom* v. *Auburn Automobile Sales Corp.*, 11 Cal. (2d) 64 [77 Pac. (2d) 1059]. In the Mar Shee case it is said:

"From the foregoing we deduce that a fact is proved as against a party when it is established by the uncontradicted testimony of the party himself or of his witnesses, under circumstances which afford no indication that the testimony is the product of mistake or inadvertence; and that when the

fact so proved is wholly irreconcilable with the presumption sought to be invoked, the latter is dispelled and disappears from the case.''

To the same effect are the cases of *Smellie* v. *Southern Pac. Co., supra,* and *Engstrom* v. *Auburn Automobile Sales Corp., supra.* (See, also, *Lam Ong* v. *Pacific Motor Trucking Corp.,* 16 Cal. App. (2d) 274 [60 Pac. (2d) 480].)

It has been repeatedly held that disputable presumptions are evidence in a case (*Pabst* v. *Shearer,* 172 Cal. 239 [156 Pac. 466]), and such presumptions may be controverted by other evidence. (*Reynolds* v. *Dryer,* 112 Cal. App. 712 [297 Pac. 563].) It has also been repeatedly held that it is a question for the jury to determine whether the presumption has been overcome by evidence offered in contradiction thereof. (*People* v. *Milner,* 122 Cal. 171 [54 Pac. 833]; *Pabst* v. *Shearer, supra.*) Respondents produced no evidence to determine what observations Mr. Duehren made just before he attempted to cross the street. Appellant offered no evidence as to whether the deceased looked *prior to the time he stepped off the curb.* Respondents were therefore entitled to the benefit of the presumption above mentioned, as their own evidence was reconcilable with it, and such presumption remained as evidence in the case until dispelled or overcome by evidence offered in contradiction thereof.

The next instruction complained of is one wherein the court, after explaining the reasonable expectancy of Mr. Duehren's life as being 17.4 years, said: ''Those (years) are established by the tables of probable expectancy, what they call the mortality tables of *insurance cases,* and, while we do not know how long anyone will live, those are taken as evidence in a case such as this.'' (Italics ours.) It is argued that by the use of the words *of insurance cases* the attention of the jury was directly invited to the fact that the instant case was an insurance case and that insurance was involved, citing *Withrow* v. *Becker,* 6 Cal. App. (2d) 723, 729 [45 Pac. (2d) 235]. The purpose of the American experience table of mortality is no doubt a matter of common knowledge and is used in fixing insurance rates and premiums and the probable average future life in years of persons. The instruction, although unhappily worded, could not be construed as a statement to the jury that the defendant was insured against liability and that he would

not individually have to pay the judgment but that it would be paid by an insurance company. No such conclusion is justified. It was apparently the thought of the court to inform the jury that such tables were employed by life insurance companies in determining average future life expectancy. The claimed error, if any, was harmless.

The trial court proceeded to comment on certain phases of the evidence in reference to a conflict about the claimed odor of alcohol on Mr. Duehren's breath. The court properly told the jury that he was only commenting thereon and that it was "entitled to disregard my views on that if you want to . . . " Therefore we perceive no error in this respect.

The next instruction contained these words: "When you get all through considering this, you will bring in a verdict one way or the other." Appellant argues that it was equivalent to telling the jury that it must bring in a verdict for either the plaintiffs or the defendant, and that it took from the jury the right to disagree, citing *Cook* v. *Los Angeles Ry. Corp.*, 13 Cal. (2d) 591 [91 Pac. (2d) 118]. This argument is more novel than sound. The jury deliberated about 20 minutes. The court commits error only when by instruction or conduct the jury is coerced into an agreement. (64 C. J., p. 1046 et seq.; 64 C. J., p. 590.) No such criticism can be made of the court's instruction. It might be that if a proper instruction as to the course to be pursued by the jury in case they disagreed had been requested, it would have been given, but no such request was made by either party.

The court then instructed the jury, in another instruction, to the effect that "A person lawfully crossing a highway in a cross-walk . . . ", is entitled to rely upon certain presumptions, to wit, that the driver of an automobile "will obey the law", etc. Appellant argues that the court in effect repeated its former instructions and thereby over-accentuated the conditions under which a pedestrian cannot be regarded as negligent. We see little merit to this argument.

Appellant insists that he was entitled to have instruction No. 9 given to the jury. It emphasized the fact that there was no such thing in this state as degrees of negligence or comparative negligence. While this is a correct statement of the law as applied to this case, the court properly instructed the jury on the question of contributory negligence. That

instruction substantially covers the principles embodied in the requested instruction. It was not error to refuse to amplify the given instruction.

■ The court refused appellant's instruction to the effect that the law presumes that all persons obey the law and exercise ordinary care. Appellant argues that the presumption should be considered as evidence on behalf of the appellant as well as for the respondents. In view of the evidence offered by appellant which in and of itself establishes negligence on the part of appellant, which fact is not argued on this appeal, and the interpretation given the cases cited by respondents bearing on the subject, we see no error in refusing the proffered instruction.

■ Appellant offered the following: "You are instructed that the use of a public highway is a privilege to be equally enjoyed by all citizens and the deceased E. T. Duehren had no greater right or privilege to use the highway than the defendant." The court instructed the jury relative to the rights of a pedestrian in a marked crosswalk and of a vehicle being driven upon the highway. Failure to give this instruction was not error. (*Brown* v. *Blair*, 26 Cal. App. (2d) 613 [80 Pac. (2d) 95].)

■ The next complaint is directed to the failure to give an instruction offered by appellant on the defense of contributory negligence. A proper instruction was given on this subject and we see no need for repetition.

■ Appellant complains at length of a failure to read to the jury section 670 of the Vehicle Code in reference to brakes and stopping distances. Appellant contends that he wished to show thereby that he could have and did stop his car within the distance required by law. The sufficiency of the brakes on appellant's car was not in question. He testified that his brakes were in satisfactory condition. There was no attempt to dispute his statement in this regard. By his own evidence he admitted that he did not see the deceased until it was too late to avoid striking him. Appellant offered no evidence to show the exact distance within which his automobile would stop at any given speed. Section 670 of the Vehicle Code provides that unless a car can be stopped within the maximum distances set forth in the code its braking equipment must be held to be insufficient, and it is a misdemeanor to operate it on the highways. Un-

der the evidence the trial court was justified in refusing the proffered instruction.

 Lastly, it is argued that it was error for the trial court to refuse to hold that the actions of the deceased at the time of the accident amounted to contributory negligence as a matter of law, citing 2 Cal. Jur. Ten-Year Supp., p. 329, and cases cited. We believe that under the evidence the question was a matter of fact to be determined by the jury. (*Clohan* v. *Kelso*, 42 Cal. App. 67 [183 Pac. 349]; *Potter* v. *Driver*, 97 Cal. App. 311 [275 Pac. 526]; *Clark* v. *Bowers*, 116 Cal. App. 88 [2 Pac. (2d) 486].)

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.