[Civ. No. 5529.   Fourth Dist.   Jan. 17, 1957.]

CALVIN BOWMAN et al., Respondents, v. ROBERT DAVIS, Appellant.

C. F. Jorz and Gary W. Sawtelle for Appellant.

Ben M. Shera for Respondents.

BARNARD, P. J.—This is an action for damages resulting from a collision between the defendant's automobile and a truck owned by the plaintiffs and driven by the plaintiff Calvin Bowman. A jury returned a unanimous verdict awarding the plaintiffs $7,660, and the defendant has appealed from the judgment.

The accident occurred at 12:10 p. m. on November 5, 1952, a clear dry day, at the intersection of United States Highway 101 and Del Obispo Street, near Dana Point. United States Highway 101 in this area runs east and west, and is a four-lane highway with a double white line in the center and a single line between the lanes on each side. As one approaches this intersection from the west, there is a considerable downgrade from the crest of a hill near Dana Point, but the road is level for 600 feet immediately west of the intersection. Del Obispo Street, a two-lane street with a white line in the center, comes into the highway from the north, and there is a stop sign at the northwest corner of this intersection. What would normally be the extension of Del Obispo Street to the south of the highway appears to be a small road or a private driveway, with rounded curbs at the edge of the highway. On the southeast corner of this intersection there is a service

station, and south of that a café. There is a driveway between the service station and the café.

On this occasion Calvin Bowman was driving east in this truck which, with its load, weighed 32,500 pounds. The defendant entered the highway from Del Obispo Street, crossed the center line, turned easterly, and then turned south to enter the driveway between the service station and the café. As he was entering this driveway the right front of the truck hit the right rear of his automobile and the truck rolled over and slid along its side. Bowman was rendered unconscious and remained unconscious until after he was taken from the scene nearly an hour later. An officer testified that the point of impact between the automobile and the truck was approximately 48 feet south of the southeast corner of this intersection; that the marks disclosed that the right rear wheel of the automobile was 7 feet north of the south curb of the highway at the time of the impact; that the truck left 150 feet of skid marks in all; and that there were 30 to 35 feet of skid marks before the point of impact. There was evidence that there was no other traffic on this highway which could have had any effect in causing this accident.

The only eyewitness to the accident testified that he was traveling east in the outside lane of the highway directly behind this truck for about a mile before the accident happened; that he stayed about 50 yards behind it, and the truck was also in the outside lane; that they were both traveling at about 50 miles an hour; that he first saw the appellant's automobile when he was 600 to 900 feet from a crosswalk which is east of the point where the collision occurred; that when he first saw that car it was entering the outside lane of the westbound lanes; that appellant's car crossed into the inside eastbound lane, turning in an easterly direction ''and to all appearances he was trying to make a left turn and continued in the inside lane (going) east''; that the appellant's car then continued ''right across in front of a truck, turned into the driveway next to the crosswalk''; that the truck had started to slow down when the appellant's automobile was crossing the center line of the highway; that the truck was then 50 feet from the automobile; that the truck was going less than 50 miles an hour at the moment of impact; that when the truck was about 50 feet from the automobile he saw the truck's brake lights go on, and knew that its brakes were being applied; that ''When the car crossed in

front of the truck, he put on his brakes and turned sharply to the left''; and that ''The right front wheel of the truck hit the right rear of the Sedan, threw the truck into a heavy skid then, and the right front buckled under and went down and the truck rolled over.''

Another witness called by the plaintiffs testified that he was traveling west on this highway; that he first saw this truck when he was about 1,500 feet east of the scene of the accident; that the truck was then from 100 to 150 feet west of a crosswalk to the east of the intersection; that the front of appellant's automobile was ''up on the riser, coming off of 101;'' that half or two-thirds of defendant's car extended out into the outside lane; that defendant's car was either stopped or moving very slowly; and that he did not see the actual occurrence of the accident.

The plaintiff Calvin Bowman testified that he did not remember the occurrence of the accident; that the last thing he remembered was coming over the crest of the hill about a mile and a half west of this intersection; that he was then traveling in an easterly direction in the outside lane closest to the curb; that he did not recall any traffic ahead of him at that point; that he did not recall approaching the intersection or seeing the defendant's automobile at any time; and that his next recollection after reaching the crest of the hill at Dana Point was hearing his wife's voice at the hospital.

The defendant testified that he made a complete stop before entering Highway 101; that he looked to his left and right, saw a clear highway and proceeded across; that he started to pull into the filling station; that he did not see the truck until after he felt an impact at the back of his automobile; and that at the moment of the impact the front bumper of his car ''was up over the curb line, up over the apron.''

Appellant's first contention is that the court was guilty of misconduct and prejudicial error in commenting to the jury on ''retrograde amnesia'' when there was no evidence of such amnesia. It is argued that in so commenting the court assumed the role of an expert medical witness and thus denied the appellant the right to cross-examine; that there was strong evidence of negligence on the part of Calvin Bowman since he was traveling 50 miles an hour with a total weight of 32,500 pounds, in violation of section 515, subdivision (a), of the Vehicle Code, and since he did not apply his brakes

until he was about 50 feet from the point of impact although the eyewitness who was traveling behind him saw appellant's car when he was more than 600 feet away; and that since the issues of negligence and contributory negligence were extremely close questions of fact any expression of his own view on the part of the trial judge could not help but tend to influence the jury.

In his opening statement counsel for the respondents had stated that Mr. Bowman was rendered unconscious in this accident, and that as a result of this unconsciousness "he suffered a medical phenomenon termed 'retrograde amnesia.'" Several witnesses testified that Bowman was unconscious for a considerable time after the accident. Bowman himself testified that he could remember nothing which immediately preceded the accident, as above stated. While he was testifying with respect to the damage to the truck the court took a recess. Immediately thereafter the court said:

"Ladies and gentlemen, I have already indicated to counsel an observation I intend to make, and I will give Mr. Sawtelle the opportunity to make his objection for the record, but I feel that I should do it in view of the state of the record.

"It has to do with the subject of retrograde amnesia. I have had the experience of lay people who do not believe that such a medical phenomenon does exist, but I can assure you if a doctor were asked the question, he would say that that is a medical phenomenon that does actually exist.

"Amnesia is a state of forgetfulness of events during a period. The word 'retrograde' means that it goes back, precedes the event. It is not uncommon in cases of injury, particularly of concussion, that a person will be blacked out as to events that occurred prior to the time he incurred the injury. We have had cases where it has gone back as much as one or two days. Every event that transpired prior to that time is blacked out of that particular person's memory, so it is a medical fact it does exist.

"Now, in making this statement, I do not presume to say to you that this witness had that. That is a matter for your determination. I am not trying to express my idea to you as to my thinking as to his credibility. All I intend to do is point out the fact that there is such a fact and such a phenomenon as retrograde amnesia.

"Now, whether this witness had retrograde amnesia is entirely within your determination."

In his general instructions the court instructed the jury to disregard any statement or expression on his part which had seemed to indicate an opinion relating to the credibility of witnesses or what inferences should be drawn from the evidence, and not to be influenced by anything he had said or done that might suggest to it that he was inclined to favor the position of either party. The court also gave this instruction on the presumption of ordinary care:

"At the outset of this trial, each party was entitled to the presumptions of law that every person takes ordinary care of his own concerns and that he obeys the law. These presumptions are a form of *prima facie* evidence and will support findings in accordance therewith, in the absence of evidence to the contrary. (When there is other evidence that conflicts with such a presumption, it is the jury's duty to weigh that evidence against the presumption (and any evidence that may support the presumption), to determine which, if either preponderates.)"

While we agree that the court's statement with respect to retrograde amnesia should not have been made, it cannot be held sufficiently prejudicial to justify a reversal. While there had been no evidence on "retrograde amnesia" there was undisputed evidence that the respondent Calvin Bowman was rendered unconscious and remained so for a considerable period. The evidence amply justified the jury in believing that Bowman was telling the truth when he testified that he remembered none of the material facts concerning the actual happening of the accident. The court's statement was largely a matter of quite common knowledge, and the court pointed out to the jury very clearly that he was not passing on the credibility of that witness, and repeatedly told the jury that whether or not this witness had suffered such amnesia was a matter for its determination. The evidence does not indicate that the issues of negligence and contributory negligence presented very close questions. When the element of proximate cause is taken into consideration the evidence of negligence on the part of Calvin Bowman was not strong. On the other hand, the evidence clearly indicates that the appellant crossed into the eastbound lanes of this main highway without proper regard to the approaching heavy truck, that he moved some distance in the inside of the eastbound lanes, and that he then turned across the outside lane when he was only a short distance in front of the truck and at a point nearly 50 feet

east of the intersection. Under the circumstances here appearing, it would be unreasonable to hold that this statement of the trial court could have had any effect on the jury's verdict.

It is next contended that the court erred in giving the above instruction on the presumption of ordinary care. Reliance is placed on the case of *Stout* v. *Southern Pac. R. R. Co.*, 127 Cal.App.2d 491 [274 P.2d 194], where it is stated that it was erroneous to give an instruction in the langauge there used "when thereby the benefit of the presumption of due care is accorded to a party who, by his testimony or by evidence introduced in his behalf, has disclosed his acts and conduct immediately prior to and at the time of an accident." In that case the court also pointed out: "Whether the error in the giving of the instruction is or is not prejudicial turns upon the circumstances of the case, including the facts and the remainder of the instructions." While there was a little evidence here as to what the respondents' truck did immediately before the impact there was no testimony which fully disclosed the acts and conduct of the driver of the truck immediately prior to and at the time of the accident, and there was no evidence as to what the driver saw or could have seen at the critical time in question. There was no evidence as to whether he saw the appellant's automobile turn into his path as soon as he could or should have seen it, or whether he acted with reasonable promptness after observing what the other driver intended to do. There was no inconsistency between this instruction and any of the evidence received, and under the authorities it was not prejudicial error to give this instruction. (*Roselle* v. *Beach,* 51 Cal.App.2d 579 [125 P.2d 77]; *Russell* v. *Andersen,* 101 Cal.App.2d 684 [226 P.2d 350]; *Stout* v. *Southern Pac. R. R. Co.,* 127 Cal.App.2d 491 [274 P.2d 194]; *Mar Shee* v. *Maryland Assur. Corp.,* 190 Cal. 1 [210 P. 269]; *Duehren* v. *Stewart,* 39 Cal.App.2d 201 [102 P.2d 784].) A further consideration is that the instruction as given applied only to the situation as it existed at the outset of the trial, and applied equally to each of the parties.

Complaint is made of the giving of three other instructions. While it is conceded that these instructions correctly stated the law, it is argued that the giving of the same was not justified by the evidence. It is argued that it was error to instruct the jury in the language of section 544, subdivisions (a) and (b), of the Vehicle Code, to the effect that a vehicle may not be turned from a direct course or moved right or left unless and until such movement can be made with reason-

able safety, and then only after an appropriate signal is given. It is argued that the evidence shows that the appellant had no intention of turning to the left but intended only to proceed across the highway at an angle to his left for the purpose of turning into the service station, and that it would have been useless to have given such a signal as it could not have been seen by the driver of the truck. The evidence is uncontradicted that after entering the intersection he proceeded to his left for some distance over the inside easterly-bound lane, and then to his right across the outside lane directly in the path of the approaching truck. The fact that these were not full right-angle turns is not controlling, and no reason appears why a proper signal could not have been seen by the driver of the truck. The giving of this instruction was fully justified by the evidence.

Error is assigned in the giving of an instruction in the language of section 540, subdivisions (a) and (b), of the Vehicle Code as it existed in 1952, with respect to right and left turns at an intersection. The appellant testified to facts which would disclose a compliance with this section, and while the instruction would not appear to have been necessary no possible prejudice appears from the fact that it was given.

■ Error is assigned in the giving of an instruction in the language of section 526, subdivision (a), of the Vehicle Code providing that a vehicle shall be driven as near as practical within a single lane and shall not be moved from such lane until such movement can be made with safety. It is argued that there was no evidence introduced bearing upon a change of lanes, and that this section of the code was not intended to regulate the movement of vehicles across an arterial highway or the making of turns. There was ample evidence that the appellant, after making his first turn into the highway, proceeded for some distance along the inner lane and then moved over and across the outer lane in order to enter the driveway leading to the service station.

After these instructions were given the court instructed the jury that a violation of these sections of the Vehicle Code constituted negligence *per se*; that the presumption of negligence arising from such a violation was not conclusive, and might be overcome by other evidence showing that such conduct was excusable or reasonable under the circumstances; and that such a violation of law is of no consequence unless it was a proximate cause of, or contributed in some degree as a

proximate cause to, an injury found to have been suffered by the plaintiff.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 13, 1957.